## French Estate

*Henry C. Beerits*, for accountant.
*H. Peter Somers*, for settlor.
*Frank B. Murdoch*, guardian ad litem.

SHOYER, J., July 23, 1963.—This trust arises under the inter vivos deed of trust, dated October 21, 1910, whereby Catharine A. French (now Scott) transferred her therein described assets to her trustees, to invest and reinvest the assets "in any securities including real estate, whatsoever, whether the same be known as legal securities or not . . . ," and to pay over the net income to her during her life, subject to spendthrift provisions, and upon her death to pay over the corpus as she may by her last will limit and appoint, or in default thereof then to her then living issue, in equal shares, per stirpes, with further substitutionary provisions now not necessary to recite. . . .

Examination of the account indicates that among the assets awarded to the accountant by the 1933 adjudication by the common pleas court and carried at an account value of $73,207.57, there were included, inter alia, 140 shares of the common stock of Smith, Kline & French Laboratories at an aggregate account value of $3,500. The principal debits also reflect net gains aggregating $82,414.15 realized from the sale of trust assets, making a total principal debit of $155,622.72. The balance of principal, shown in the account at cost or acquisition value, aggregates $135,920.51, and as of April 15, 1963, had a market value of $3,345,912.83. Included in this present principal balance are 49,500 shares of common stock of Smith, Kline & French Laboratories at an account value of $3,437.50 and an applicable market value of $3,198,937.50.

The guardian-trustee ad litem's report reflects his comprehensive investigation and analysis of this "blue chip" major asset, its history, growth and potential value. Consideration of the settlor's 73 years of age, her large income tax liability, her need for more income to meet her obligations, and regard for the safety of the corpus are cited by him as the basis for

his acquiescence in the accountant's determination to sell off some of the Smith, Kline & French stock and obtain greater diversification of the investment portfolio. The question of diversification of investment is, in the first instance, within the sound discretion of the trustee. See Kittridge Estate, 20 D. & C. 2d 611, and 26 D. & C. 2d 151.

The accountant raises this question, since under the 1954 Internal Revenue Code and regulations pursuant thereto, the *settlor,* rather than the trustee, *is personally* liable for capital gains tax on gains realized by her deed of trust even though those *gains are retained by the trust:* (1) Should the trust *principal* pay to the settlor-income beneficiary the capital gains tax on such gains; and (2) should the *amount* paid be calculated as though the capital gains tax was payable by the trustee, rather than on the basis of the bracket in which the settlor-taxpayer may find herself as a result of such gain?

The accountant in its notice to the parties and in a supporting memorandum of law takes the affirmative position in answer to both of these questions. The guardian-trustee ad litem's report concurs in the accountant's conclusions.

The memorandum of law submitted by counsel for accountant points out that credit is taken in the account, inter alia, for the payment out of principal on March 15, 1944, of the sum of $8.38 and on December 12, 1946, of the sum of $344.74 for income taxes on capital gains realized by the trust. These payments are not in controversy, because under the 1939 Internal Revenue Code such taxes were properly payable by the trustee. However, the account also reflects the payment from principal on January 7, 1957, of the sum of $3,139.42, and on January 11, 1962, of the sum of $25.74 of income tax in connection with other capital

gains resulting from the sale of trust assets. The $3,139.42 payment is attributed to the sale by the trustee on August 14, 1956, of 44 shares of common stock of Finance Company of Pennsylvania for $28,596.48, which stock had an account value of $4,664 and resulted in a gain of $23,932.48, of which gain the sum of $19,772.81 (less $3,068 proportionate part of the capital gains tax and $40 cost of making the calculations, or net of $16,664.81) was on January 20, 1958, apportioned to income.*

The accountant's memorandum further points out that on February 6, 1963, the trustee sold 900 shares of common stock of Smith, Kline & French Laboratories for $56,507.04, which shares had an aggregate account value of $62.50, and produced a gain of $56,444.54. This entire substantial gain is retained in principal pursuant to the rule laid down in Catherwood Trust, 405 Pa. 61, and the provisions of the Principal and Income Act of July 3, 1947, P. L. 1283, 20 PS §3470.1, amended June 30, 1972 (No. 164), 20 PS §8101. Yet, as pointed out in Mr. Murdoch's report, the tax imposed on this gain must, under existing Internal Revenue Code regulations 1.674(b)-1(b)(3) and 1.671-3, be paid by the settlor.

The inequity of the tax consequences are urged by the accountant and by the guardian-trustee ad litem as requiring the exercise of the equitable powers of this court to relieve the unjust tax burden upon the settlor: Bell Estate, 7 Fiduc. Rep. 1 (O.C. Chester Co., 1956), affirmed 393 Pa. 623 (1958), and Rice Trust, 8 D. & C. 2d 379, 6 Fiduc. Rep. 225 (O. C. Montg. Co., (1956)), are cited in support of the proposition.

Furthermore, section 11(3) of the Principal and

---

* No objection was made to this distribution.

Income Act of July 3, 1947, P. L. 1283, 20 PS §3470.11 (3),** in pertinent part provides:

"Any tax levied by any authority, Federal, State or foreign, upon profit or gain defined as principal under the terms of subsection (2) of section 3 shall be paid out of principal notwithstanding said tax may be denominated a tax upon income by the taxing authority."

This clear expression of the legislative intent to charge the tax upon the fund to which it is attributable is aside from and without regard as to *who* shall pay the tax. Where under the Pennsylvania rule of apportionment a gain on a sale was apportioned in part to principal and a part to income, the uniform practice was to charge each share with its proportionate part of the tax burden even though the income tax on the full gain is charged to and paid by the trustee. This is but another application of the maxim "he who seeks equity must do equity." A life tenant who, prior to the decision in Catherwood, claimed a portion of a gain on a sale of trust assets under the Pennsylvania rule took the gain subject to the tax burden attributable to the gain. Equity similarly requires that although the Internal Revenue Code and regulations impose upon the settlor-beneficiary the income tax liability on capital gains realized and retained by the trustee, the *principal* of the trust should be applied in relief of such tax. It is so ordered.

The second question pertains to the measurement of the tax liability. Should principal reimburse the income beneficiary the actual amount paid by the income beneficiary because of the gain, or the amount which the trustee would be obliged to pay if the tax were chargeable to the trustee under the Internal

---

** Now §8111(c) of the Probate, Estates & Fiduciaries Code.

Revenue Code? The report by the guardian-trustee ad litem and the memorandum by counsel for accountant fully discuss the administrative problems that might arise if the tax attributable to the trust was measured by the settlor-beneficiary's actual payment and the advantages of the alternative method. The recommendation of the guardian-trustee ad litem that the principal reimburse the settlor-beneficiary such amount of income tax due on capital gains received by the trust to the extent that such tax would be required to be paid if taxable to the trustee, is approved. . . . And now, July 24, 1963, the account is confirmed nisi.