Frank D. Paulo, S.
Two proceedings concerning the estate of Roderick MacLeod Cameron, who died in 1914, are before the court. In one proceeding, Peter B. Olney has asked to have his accounts settled and for permission to resign as executor and trustee. In an earlier opinion, dated May 22, 1963, he was allowed to resign and decedent’s son, Roderick W. Cameron, was appointed in his place. The other proceeding involves the settlement of the accounts of a deceased executrix and trustee, Anne Tiffany. These two proceedings are consolidated with the consent of the parties.
There have been four prior accountings in this estate. The last one was in 1935. In settling that account the then Surrogate expressly reserved for a later determination the question of whether a certain extraordinary dividend received by the trustees from Cameron Estates, Inc., should be treated as principal or income. This question will now be determined.
When he died, decedent owned undivided fractional interests in various parcels of real estate in Richmond and Suffolk Counties. In 1923 the executors and trustees sought and received Supreme Court approval of the formation of Cameron Estates, Inc., pursuant to section 116 of the Real Property Law (now Real Property Actions and Proceedings Law, § 1641). *34 The corporation took title to the real property and the estate received stock and bonds in exchange. Prior to 1935 the corporation sold substantial portions of its real estate holdings in Richmond County at a profit over book value of $91,816.70. Out of this profit the extraordinary dividend in question was paid to the stockholders, i
< < right to a dividend as between life tenant and remainder-man of an estate is determined by the facts as to the source and character of the dividend considered in the light of the testator’s intention.” (Matter of Eng, 204 App. Div. 634, 637, affd. 237 N. Y. 577. See, also, Matter of Osborne, 209 N. Y. 450, 458; United States Trust Co. v. Heye, 224 N. Y. 242.)
As a general rule dividends representing the increased value of the investments of a corporation are to be considered a distribution of capital and should be added to the principal of the trust. (Thayer v. Burr, 201 N. Y. 155.) The Court of Appeals has indicated its approval of this rule as applied to real estate corporations in Matter of Jackson (258 N. Y. 281).
There are exceptions to the general rule, and it is urged that the exception established in Matter of Eng (supra) should be applied. This exception was based on a finding that the corporation there involved was a real estate trading corporation, and when it sold its real property it was merely selling its stock in trade. These facts led the court to conclude that the profits realized were made in the ordinary course of business and belonged to the income beneficiary.
Cameron Estates, Inc., was not a trading corporation buying and selling real estate in the ordinary course of business. It was formed under a special statute (Real Property Law, § 116). This statute, while permitting a trustee to make what would otherwise be an unauthorized investment, does not authorize the formation of a real estate trading corporation. A corporation formed under this legislative grant of authority is in the nature of a real estate holding corporation, designed to permit unified management and orderly liquidation of real property where fractional Ownership exists. The history of Cameron Estates, Inc., discloised in the record before the court buttresses this conclusion. There is no evidence that the corporation ever bought any real property. It appears that the lands initially conveyed to the corporation produced enough income to pay expenses and from time to time to pay some ordinary dividends. Ultimately all the real estate holdings of the corporation were sold and the corporation was dissolved.
The court concludes that the extraordinary dividends must be added to the principal of the trust.
*35 Although no formal objections were ever filed in either of the proceedings, several matters were the subject of disagreement among the parties. These disagreements have now been resolved by stipulation. With all parties consenting, the court approves the payment of full statutory commissions since the last accounting to the estate of Anne Tiffany and to Peter B. Olney less, of course, commissions already retained. The payment of the fees for accounting services rendered to the estate by John Pegg & Co. is approved in the proposed amount, as are the attorneys’ fees to be paid to Lyle E. Mahan, Esq.
The petitions filed in these companion proceedings asked the court to name a successor trustee for .the late Anne Tiffany so that there would be three trustees again. The court construes the will as not requiring three trustees under existing conditions and, in the exercise of discretion, declines to appoint a successor at this time.