John D. Bennett, S.
This is a motion by the guardian ad litem to reargue the decision (reported in 67 Mise 2d 132) that the trustees were not required to charge income with income taxes payable by four residuary trusts as the result of principal distributions to those trusts. Those distributions were “ deemed ” income under the 1954 Internal Revenue Code policy decision to treat all distributions, whether of corpus or income, as taxable income to the recipients to the extent of the estate’s distributable net income (Internal Revenue Code, §§ 661, 662).
The complexion of this matter has altered somewhat since the initial presentation of arguments. An amicus curiae brief has been filed on behalf of the New York State Bankers Association (Trust Division) in support of the application of the guardian ad litem for a reconsideration and the trustees who were absolved from any impropriety in the former decision in failing to make the sought after adjustment from income to principal have indicated to the court that they would take no position on this reargument.
The 1954 Code policy adverted to can be both a serious tax trap for the unwary and an important post-mortem tax planning tool in the hands of the sophisticated fiduciary; a tax trap in that the unwary estate practitioner familiar only with fiduciary accounting principles may suddenly find that the distribution of a family automobile results in income to the recipient. On the other hand, the sophisticated use of distributions in creating multiple entities, such as testamentary trusts, has significant tax saving possibilities (Gilbert, Post-Mortem Estate Planning, 21 Okla. L. Rev. 1, 9 [1968]). While these tax saving devices have been in use for many years now and “ [c] orporate fiduciaries uniformly follow the practice of charging to income, the income taxes payable by trust principal, [t]here is no authority directly in point. Compare In re Kent’s Estate, 23 Fla. Supp. 133 (1964), with Estate of Stewart S. Cooper, 186 So. 2d 844 (Fla. 1966) ” (26 N. Y. U. Inst. Fed. Taxation 1394, n. 44). Another commentator has referred to the apparent common practice of most corporate fiduciaries charging the tax to income as the more “equitable approach” (Parr, Distributions by *363 Estates, A Review of the Tax Consequences, 107 Trusts and Estates 97 [1968]).
A review of cases dealing with the effects of tax elections and distributions on beneficiaries and whether principal and income adjustments should be made does not reveal a uniformity of treatment by the courts. The deduction of administration expenses for estate income tax purposes rather than estate tax purposes requires an equitable adjustment from income to principal, known as the Warms’ adjustment, and has been codified by statute (EPTL 11-1.2, subd. [A]; accord. Matter of Bixby, 140 Cal. App. 2d 326 [1956]; Matter of Bell, 7 Fiduciary Rep. 1 [Pa. 1956]). Conversely an equitable adjustment has been denied principal in New York where the estate has realized capital gains as well as ordinary income during the year but administration expenses are solely deductible against ordinary taxable income (Matter of Dick, 29 Misc 2d 648; contra Matter of Rice, 8 D. & C. 2d 379, 6 Fiduciary Rep. 225 [Pa. 1956]). The Warms and Dich cases have been distinguished by some commentators on the basis that the Warms’ adjustment involves the exercise of an option whereas the Dich case arises out of a nonelective operation of the tax law which the court was not authorized to alter (Parr, Distribution of Estates, A Review of the Tax Consequences, supra, and Michaelson, Income Taxation of Estates and Trusts, P. L. I. Tax Monograph, p. 32).
As mentioned above, no case directly in point has required an adjustment as the result of the type of distributions here made. One Florida case (Matter of Cooper, 186 So. 2d 844 [Fla.]), suggests that such an allocation should be made. There the widow who had received a dower distribution which was ‘ ‘ deemed ’ ’ income preserved her right to reimbursement by specific agreement. The court stated that if the widow had shouldered a disproportionate share of the income tax, she should be reimbursed. On the other hand, another Florida court (Matter of Kent, 23 Fla. Supp. 133), while approving a Warms’ adjustment cited Matter of Dich (supra) in support of the following language: “ A fiduciary is not required in this state nor should he attempt to cure inequities generally created by the uncorrelated interaction of the tax laws with the principles of estate accounting; these must await legislative attention ” (p. 136).
One New York case, Matter of Dreyfus (N. Y. L. J., May 16, 1963, p. 14, col. 5) seems to follow the Kent and Dich approach but there are, however, distinguishable features. There the decedent left a cash legacy of $100,000 to each of four persons payable in four installments with the result that a portion of *364 the payments were taxable to the recipients as income because there were more than three installments (Internal Revenue Code, § 663, subd. [a], par. [1]). The court held that the decedent was chargeable with knowledge of the tax law result of making the legacies payable in more than three installments and that it was powerless to reach a more acceptable result.
It is this court’s considered opinion, however, that the Dick case rationale lacks the requisite equitable approach. As one writer observed: ‘ ‘ Sections of the 1954 Code dealing with estate and trusts yield other examples directly contrary to both estate and trust law and common sense. For example, subchapter J, part I, was apparently drawn by tax lawyers not entirely familiar with trust concepts or fiduciary accounting principles. The fiduciary and the court must he free in such cases to repair the damage hy equitable adjustment ” (Browning, Problems of Fiduciary Accounting, 36 N. Y. U. L. Rev. 931, p. 953 [1961]). (Italics supplied.)
This court’s prior decision was not the result of a failure to recognize the equitable argument in favor of an adjustment but was instead based primarily on an interpretation of that portion of the present New York State Principal and Income Act (EPTL 11-2.1) which enumerates the expenses chargeable to principal and particularly subdivision (1) (par. [4], cl. [C]) which reads, “ any tax levied upon profits, gains or other receipts allocated to principal notwithstanding denomination of the tax as an income tax by the taxing authority ”, shall be a principal charge. Unquestionably a literal interpretation of ‘ ‘ other receipts ’ ’ would include principal distributions to testamentary trusts as here which are only ‘1 deemed ’ ’ income by the Internal Revenue Code. Both Matter of Lecompte (52 Misc 2d 549, 550) and the Third Report of the Temporary State Commission on the Law of Estates (N. Y. Legis. Doc., 1964, No. 19, pp. 410, 466), relied on by this court in its prior decision, indicate that this language of the Principal and Income Act codifies the New York decisions. This is undoubtedly so insofar as ordinary income taxes are chargeable to income and capital gains taxes to principal (Matter of King, 130 Misc. 296) but there are no previous New York cases interpreting the ‘‘ other receipts allocated to principal ’ ’ language of subdivision (1) (par. [4], cl. [C]) of the Principal and Income Act. To that extent, the authorities cited in the prior decision cannot be relied upon. Since the New York Principal and Income Act is in large part taken from the revised Uniform Principal and Income Act (Third Report of the Temporary Commission on Law of Estates, supra) and the language here in question is exactly the same in both Acts, correspondence *365 relating to this problem was initiated with the National Conference of Commissioners on Uniform State Laws, Chicago, Illinois. The court, however, has been informed that there is nothing by way of explanation or discussion of the particular language contained in section 13 (subd. [c], par. [4]) of the revised Uniform Act (the counterpart of subd. [1], par. [4], cl. [C] of the New York Act).
The amicus curiae brief nevertheless concedes that there are occasions where income taxes payable by a trust as the result of a trapping distribution (exclusive of capital gains taxes) should be charged to principal. In fact, the brief refers to the fact that this occurred in this very estate as the result of receiving income in respect of a decedent in the form of deferred compensation and various accruals. Their brief states: “We agree that income taxes attributable to such income that is allocable to corpus should be paid from corpus ” (p. 22).
In seeking to avoid an interpretation of the “ other receipts allocated to principal” language of subdivision (1) (par. [4], cl. [0]), the amicus curiae brief emphasizes that the problem can be reversed and viewed from a position of what is “ net ” income. The revised Uniform Act goes into some detail and spells out the actual items that are to be deducted in arriving at net income (Revised Uniform Principal and Income Act, § 5, subd. [b], par. [2], 9B U. L. A., pp. 576-577). The New York Act, in one of its variations from the Uniform Act, merely adopts the phrase ‘ ‘ net ’ ’ income, obviously inferring that something less than gross income is to be distributed to those entitled to the income earned during administration (Matter of Shamel, 52 Misc 2d 128, 129).
The court believes that a realistic view of this problem requires a determination based upon the purely equitable principle that the burden of income taxes should be charged to the account into which the taxed item goes (Matter of Mankowski, 110 N. Y. S. 2d 677, 681; Matter of Bixby, supra, p. 335; Ann. 108 A. L. R. 1138). Here the distribution resulting in taxes for which an adjustment is sought was in fact corpus or principal. Such distribution was only ‘1 deemed ’ ’ income by the taxing authorities. The tax in fact is attributable to a receipt by the estate of income for accounting purposes. While the Code provisions may fly in the face of reality, there is no reason for a court concerned with the proper administration of estates to follow suit. As was stated by the court in Matter of Bixby (supra, pp. 339-340): “ The ultimate result is salutary in that the reciprocal and correlative rights of all the takers under the will remain vested in the posture prescribed by the state rules *366 governing rights and interests in the estates of decedents, undisrupted and undisturbed by the transient vagaries of the federal income tax laws. ’ ’ Accordingly the motion to reargue is granted and upon reargument the prior decision is modified by sustaining the objection of the guardian ad litem and directing that the adjustment from income to principal, the extent to which has been agreed upon in the papers, be made.