John D. Bennett, S.
In this accounting proceeding the guardian ad litem has interposed three objections.
Objection No. 1 is that the trustees deposited securities comprising the corpus of the trusts with the Depository Trust Company in a form under which all trust deposits maintained by the fiduciary were merged into one account. It is the position *376 of the guardian ad litem that while the fiduciary is authorized to deposit securities with the Depository Trust Company under EPTL 11-1.9 it may only do so providing the securities are not merged with other trust securities but are deposited in an individual trust or estate account.
Under Objection No. 2 the guardian ad litem objects to the trustees’ refusal to provide him with verification of the trust holdings which are on deposit with the Depository Trust Company other than giving him the form of certification prescribed by EPTL 11-1.9. It is the position of the guardian ad litem that he is not precluded from utilizing other disclosure devices afforded him in order to verify the trust holdings.
Objection No. 3 is that the trustees failed to reimburse the principal accounts of three of the trusts from income accounts for fiduciary income tax liabilities.
During the nineteen-sixties and early seventies the securities market found itself in what has commonly been called a severe “ paper work crisis.” Because of the constant flow of certificates evidencing ownership of securities it was a monumental task for brokerage houses to transact transfers and sales of securities. In addition thereto they had to deal with problems of theft and loss of securities. Stock markets had to close for periods of time and hours had to be curtailed in order for the back-office breakdown to be rectified. In-depth studies to rectify unsafe and unsound practices in the securities market were undertaken by various agencies, commissions and the securities market itself. It was the overwhelming consensus of ■ those dealing with this problem that securities should be immobilized as much as possible. Pilot projects to inaugurate this program were initiated and ultimately it was suggested that a central depository company be organized to immobilize securities. Ultimately the Depository Trust Company was organized under the authority of the Uniform Commercial Code and its program was enhanced by the passage of EPTL 11-1.9 which gave fiduciaries or custodians the power to deposit securities in a central depository. Without such authorization by statute, a fiduciary would not have been permitted to qualify as a depositor with said company. In order to insure the greatest possible benefits to the public interest and to gain wide support, the Depository Trust Company was organized as a trust company subject to the regulations and surveillance of the New York State Banking Department. By virtue of its membership in the Federal Reserve System, as a member bank the company is subject to regulation and surveillance by the board of governors of the *377 Federal Reserve Board. It is also subject to regulations and surveillance of the Securities and Exchange Commission.
The effectiveness of utilization of the Depository Trust Company is evidenced by the fact that presently there are in excess of 1% billion shares of securities on deposit with the company with a value of in excess of $60 billion. Transactions in 1972 were in excess of $163 billion. By depositing securities with the Depository Trust Company securities no longer have to be physically transferred and all transactions are completed by data processing or mere book entry transfers.
Because of the seriousness of the objections raised by the guardian ad litem a conference was held and attended by the court and its staff together with the attorneys for the petitioner, the guardian ad litem and his staff, the chairman of the board and chief executive officer of the Depository Trust Company and its counsel and with the senior vice-president of the Federal Reserve Bank of New York. At the conferences all of the ramifications of the objections interposed by the guardian ad litem were fully explored and aided the court in making its determination herein.
EPTL 11-1.6 makes it very clear that a fiduciary must segregate assets it holds as a fiduciary from that of its individual property. Accordingly, the fiduciary may not maintain an account with the Depository Trust Company which includes its individual property.
As to whether the fiduciary may group all of its trust assets and deposit them in one account, the court can appreciate the problems of the guardian ad litem or anyone having an interest in a trust wishing to verify that the fiduciary has indeed assets on hand which belong to the corpus of a trust or constitute part of an estate. At the same time, however, it has been amply demonstrated to the court by the chairman of the board and chief executive officer of the Depository Trust Company that having fiduciaries, especially corporate fiduciaries, opening separate accounts with the Depository Trust Company for each trust or estate that a fiduciary may have under its control would severely curtail the program of immobilizing stock certificates and would hinder easy transfer under the data processing system now in use by the Depository Trust 'Company. The court is convinced that it would be better for one to be able to verify securities on hand if each trust had its own account with the Depository Trust Company but the benefits of merging all trusts and estate accounts into one account in the name of a fiduciary with the Depository Trust Company aid in the legis *378 lative sanctioned program to immobilize securities and provide for a more efficient means of dealing with the transfer of title to securities.
Accordingly, the court finds that it was the spirit of the Legislature in enacting EPTL 11-1.9 to permit a fiduciary to merge all of its trust and estate assets and deposit them in one account providing that account deals solely with trust and estate assets and are not merged with assets of the individual property of the fiduciary.
The guardian ad litem in his report has indicated the procedure utilized iby the trustee for the flow of securities from a particular account and ultimately having those securities placed with the Depository Trust Company. The internal transfer of these securities can readily be reviewed by the guardian ad litem to the point when the securities are actually transferred to the Depository Trust Company. The guardian ad litem requests that if the court were to find that the fiduciary could merge all trust accounts and deposit them in one account with the Depository Trust Company, a program of verification of assets on hand be set forth. However, the trustee takes the position that EPTL 11-1.9 provides that all that is required of a fiduciary when a demand is made by a party in an accounting proceeding is to certify in writing the securities deposited by the fiduciary with the Depository Trust Company and that a party may not utilize any other discovery or disclosure devices to verify securities held by the fiduciary. The court finds that such verification is no 'greater than the verification required of a fiduciary at the end of his account and that a party is not precluded from utilizing other disclosure devices afforded to him such as an examination of the fiduciary pursuant to SCPA 2211 and proceedings afforded under CPLE article 31.
The rights of a party to verify assets of an estate must be made compatible with the over-all intent for the creation of the Depository Trust Company. The court finds that this can be accomplished by the recommendations made by the guardian ad litem as modified by the suggestions made by the chairman of the board and chief executive officer of the Depository Trust Company. Keeping in mind that a corporate fiduciary is under the surveillance of various governmental regulatory agencies and that the Depository Trust Company is also under such surveillance, a party can rely to a great extent that his securities are going to be protected. To further this verification, the court will direct the trustees to permit the guardian ad litem to review those documents of transfer from the estate account to the *379 merged account and then with the Depository Trust Company. This will verify that the estate securities were indeed part of the assets deposited in the Depository Trust Company of the fiduciary. The Depository Trust Company will certify to the guardian ad litem that it has on hand certain securities, the quantities of which are either equal to or greater than the quantities shown on the certificate submitted to it. On that certificate will be the assets of the within estate. While it may be true that this certification only verifies that there are certain quantities of securities on hand, it does not verify that they are owned by the within trust. However, the guardian ad litem will know that there is on hand at least the quantity of securities to cover what is supposed to ibe in his account. If cash or bearer bonds comprise the corpus of a trust or part of an estate, one having an interest in verifying the assets of the estate can at least be satisfied when a fiduciary exhibits enough cash or bearer bonds to cover the 'assets which are supposed to be on hand in a particular estate. It is true, however, that it may very well be that these same assets could be used time and again for verification in various estates and there is no complete guarantee that they actually do belong to a particular estate. However, in such instances one must rely on the regulatory agencies to be sure that fiduciaries have all of the assets that they must have on hand to cover all accounts and deposits.
Accordingly, the court approves the modified certification proposed by the chairman of the board and chief executive officer Pf the Depository Trust Company and the guardian ad litem may conduct his examination as previously permitted.
It should be noted that a like provision to immobilize Federal securities was enacted under EPTL 11-1.8 but that section deals only with corporate fiduciaries and not with individuals. In reviewing this entire matter the court was concerned with an individual fiduciary being permitted to deposit securities in a central depository and respectfully suggests that the Legislature review whether EPTL 11-1.9 be restricted as is EPTL 11-1.8 to corporate fiduciaries. However, it has been demonstrated to the court that for practical purposes due to the expense involved it would be unlikely that an individual would be able to utilize the services of the Depository Trust Company. In the event an individual did use the services of the Depository Trust Company as a fiduciary, pursuant to EPTL 11-1.6 they would not be permitted to comingle their own funds with a fiduciary account and it may be advisable for the courts to direct that they may only utilize the services of the Depository Trust Company pro *380 vided an individual account is made for a particular estate and that an individual may not merge other fiduciary assets with an estate or trust account.
Some of the earlier means of aiding the problem dealing with the handling of securities was the authorization of those instances where a fiduciary may have securities registered in the name of a nominee (EPTL 11-1.1, subd. [b], par. [10]; EPTL 11-1.6). In those instances the statute was very clear that a bank would be absolutely liable for any loss occasioned by the acts of its nominee with respect to securities registered in the nominee’s name. EPTL 11-1.9 does not specifically provide for liability of a fiduciary utilizing the Depository Trust Company in the event that securities are lost or an estate suffers a loss through the utilization of the Depository Trust Company. The court has been advised that there is insurance provided to the Depository Trust Company for loss (the adequacy of which may possibly be questioned) but at the same time there are limited instances where negotiable instruments are available for transfer and theoretically a loss to an estate is possible. The court at this time is not passing on what liability will arise by a fiduciary utilizing EPTL 11-1.9 but it respectfully requests the Legislature to consider imposing a liability as it has in EPTL 11-1.6.
As to Objection No. 3, it appears that in 1957 the decedent’s estate had approximately $126,000 of income and all or substantially all of it was distributed directly to the current income beneficiaries of the residuary trusts. However, during the same year substantial principal distributions were made from the estate to the residuary trusts. More than $2.5 million were distributed to three of the within trusts. Under the provisions of the Internal Revenue Code dealing with income taxes of estates and trusts, the income tax on the $126,000 worth of income which was distributed had to be allocated proportionately among not only the recipients of the income but also the residuary trusts receiving principal distributions. Because the principal distributions were substantial, almost the entire distributable net income of the estate was allocated to the trusts for income tax purposes. The guardian ad litem appreciates the benefits of the tax law in that it permits the shifting of the income tax liability from a higher taxpayer to a lower-bracket taxpayer. However, he contends that while “ trapping distributions ” may be of benefit to income beneficiaries, the income beneficiaries .should reimburse the principal accounts of the trusts for the taxes paid out of corpus and he relies on Matter *381 of Holloway (68 Misc 2d 361) which was decided by this court.
The trustees contend that pursuant to the terms of the decedent’s will under article twentieth the executors and trustees were given broad powers to determine “ all questions 'between principal and income accounts, and such determination as to whether any expense should be charged, or any property allocated to income or principal, or partly to income and partly to principal, shall 'bind all persons who may be or become interested in the estate, notwithstanding any determination of the Courts.” The guardian ad litem questions whether taxes are to be included in the discretionary powers dealing with expenses and states that even if they do apply, a fiduciary nonetheless is obligated to act reasonably and not abuse discretion afforded to it. The trustees contend that prior to the holding in the Holloway case made in 1972 the law was unclear and since it was unclear, it was not an abuse of discretion for the trustees to decide not to have principal reimbursed iby the income beneficiaries (or the income account) for the taxes paid by principal, and rely on Matter of Lecompte (52 Misc 2d 549). The trustees contend that Matter of Holloway should be distinguished from the within estate due to the fact that there were no discretionary powers afforded to the fiduciaries in the Holloway matter and a reserve in that estate was maintained by order of this court for an ultimate determination as to whether an allocation should be made. They contend that no reserve was maintained in the within estate.
In the opinion of the court, the fiduciary should not be surcharged for exercising its discretion in not having the principal account reimbursed for the taxes paid (EPTL 11-2.1) in view of the fact that Matter of Holloway was not decided when the taxes were paid. However, there is not sufficient information before the court at this time to determine whether an equitable allocation could be made at this late date from the income account to principal. Accordingly, the court will place the matter on its calendar for a conference on Wednesday, January 29, 1975 at 9:30 a.m. for the purpose of discussing this issue further with the attorneys for the fiduciary, the guardian ad litem and all parties concerned.
Objection No. 1 is dismissed. Objection No. 2 is sustained to the extent provided heretofore, and Objection No. 3 will be determined after the afore-mentioned conference.