NEW ENGLAND MERCHANTS NATIONAL BANK & others,
trustees, *vs.* ELISHA EDMANDS CONVERSE & others
(and two companion cases[1]).

Suffolk.   September 12, 1977. — November 16, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Trust,* Taxation, Income beneficiary, Capital and income, Federal capital expenses deduction.

Trustees of trusts which were established under wills probated prior to the enactment of § 643 of the Internal Revenue Code of 1954, and which provided that the net income of each trust was to be paid currently and gave the trustees no discretionary authority to apportion charges and expenses as between principal and income, were not required to make an adjustment between principal and income reimbursing principal for the difference between the Federal capital gains taxes paid out of principal and the lesser capital gains taxes which would have been paid if deductions for certain expenses paid out of principal were given to the trust rather than to the income beneficiaries. [640-644]

TRUSTEES' ACCOUNTS filed in the Probate Court for the county of Suffolk under the will of Abby Shaw Proctor on September 18, 1970, November 5, 1971, and December 14, 1972, and under the will of Mary Ida Converse on July 8, 1971, December 22, 1971, December 28, 1972, March 6, 1973, November 8, 1973, and January 24, 1974.

The cases were reserved and reported by *Warner,* J. The Supreme Judicial Court granted requests for direct review.

*A. James Casner (John E. Rogerson & Joseph R. Watkins* with him) for the New England Merchants National Bank & others.

---

[1] Boston Safe Deposit and Trust Company, trustee, *vs.* Henry S. Shaw & others; Boston Safe Deposit and Trust Company & others, trustees, *vs.* Elisha Edmands Converse & others.

*Jerry M. Brown (William H. Bentley* with him) for Stephen W. Howe & another, guardians ad litem.

BRAUCHER, J. Guardians ad litem are here objecting to trustees' accounts because no adjustment was made between income and principal to reimburse principal for a portion of Federal capital gains taxes paid out of principal. Pursuant to Federal law certain capital expenses were deducted in determining the net income taxable to the income beneficiaries; if those expenses had been available as deductions in determining the capital gains taxes, lesser taxes would have been paid out of principal. We hold that in the circumstances of these cases the trustees are not required to make the adjustment in question.

In each case testamentary trustees are seeking allowance of accounts, and a guardian ad litem is objecting. A judge of the Probate Court for Suffolk County reserved and reported the cases without decision to the Appeals Court pursuant to G. L. c. 215, § 13, on statements of agreed facts. We allowed applications for direct appellate review. We summarize the agreed facts.

1. *The agreed facts.* The net income of each trust is to be distributed currently to beneficiaries, and the trustees have no discretion to allocate charges between income and principal. Under § 643 of the Internal Revenue Code of 1954 certain items are deducted in computing the "distributable net income" taxable to income beneficiaries under § 652. Those items, such as trustees' capital compensation, Massachusetts taxes on gains, and other administration expenses, are paid from principal under Massachusetts probate practice. When the trust realizes net capital gains, those items are not deductible under the Code in computing the tax to be paid by the trust out of principal, and the principal bears the tax accordingly. In the first of three cases principal paid extra taxes of $3,191.53, in the second $4,158.55, and in the third $17,298.61. The guardians ad litem, however, propose allocation of the tax on the basis of adjusted income and adjusted capital gains; this method would produce an ad-

justment of $2,584.32 for the first trust, $3,110.41 for the second, and $14,595.96 for the third.

It has not been the usual practice among Massachusetts fiduciaries to make such adjustments. None of the corporate fiduciaries makes the adjustment; a few of the individual fiduciaries do. The question whether the adjustment should be made arises when and only when the trust pays Federal capital gains taxes out of principal. Absent capital gain, the deductions for capital expenses would be wasted unless they are used by the income beneficiaries, as the Federal law provides. There is no evidence of a congressional intent to bind the States in the application of principles of equity as between income and principal.

Estimates of the administrative costs of making the adjustments have been made by six Boston corporate fiduciaries. The estimates range from $1,485 to $17,000 for one-time departmental start-up costs and from $18 to $100 annual cost per account. A Boston corporation which claims to have made such adjustments for more than twenty years asserts that the required clerical time for each trust would not exceed thirty minutes a year unless there were some very unusual circumstances; no special charge is made for the adjustment.

Corporate fiduciaries in Philadelphia make such adjustments. Because of circumstances not present in Massachusetts,[2] trusts valued at less than $1,000,000 are excluded on a "de minimis" principle. Corporate fiduciaries in Pittsburgh and New York City do not make such adjustments.

2. *The equities.* Before 1954, capital expenses like those in issue here were deductible in computing capital gains taxes payable by the trust. If there was insufficient income taxable to principal, the deductions could not be used by anyone, and there was dissatisfaction on account of such "wasted" deductions. S. Rep. No. 1622, 83d Cong.,

---

[2] Until recently Pennsylvania did not impose a State tax on capital gains in trust, and trustees were compensated out of capital only at termination.

2d Sess. 346 (1954). Under § 643 of the Internal Revenue Code of 1954 that waste was ended, since the benefit of the deductions was given to the income beneficiaries.

It was promptly objected that "it is unsound as a general principle to give one person the benefit of a deduction when the burden of the expenditure involved is borne by another." Fillman, Selections from Subchapter J, 10 Tax L. Rev. 453, 461 (1955). Later it was suggested, "The fiduciary and the court must be free in such cases to repair the damage by equitable adjustment." Browning, Problems of Fiduciary Accounting, 36 N.Y.U.L. Rev. 931, 953 (1961), quoted with approval, *Matter of Holloway,* 68 Misc. 2d 361, 364 (N.Y. Sur. Ct. 1972).

In *Rice Estate,* 8 Pa. D. & C.2d 379, 410-416 (Orphans' Ct. 1956), the court made an equitable adjustment like that for which the guardians ad litem here contend. In *Matter of Dick,* 29 Misc. 2d 648, 650 (N.Y. Sur. Ct. 1961), however, the court recognized the "inequities created by the tax statute," but held it did not have "the authority to alter the impact of the tax statute." Accord, *Matter of Adler,* N.Y.L.J., June 21, 1974, at 15 (N.Y. Sur. Ct. 1974). The New York cases distinguished situations where a fiduciary had made a choice permitted by the Federal tax statute and an equitable adjustment was made. *Matter of Warms,* 140 N.Y.S.2d 169 (Sur. Ct. 1955). *Matter of Holloway,* 68 Misc. 2d 361 (N.Y. Sur. Ct. 1972). Cf. *Matter of Lecompte,* 52 Misc. 2d 549 (N.Y. Sur. Ct. 1966) (exercise of trustees' power to apportion).

*Holcombe* v. *Ginn,* 296 Mass. 415, 417 (1937), makes it clear that this court does have the authority to alter the impact of the Federal tax statute. Federal law "does not control the accounting between the trustee and his beneficiaries, and the law which does control that accounting, in accord with sound general principles of long standing, requires that ordinary items of current expense, such as taxes assessed upon the right to receive income, should be charged to income." Courts in other jurisdictions have also exercised a power to make equitable adjustments to offset inequities produced by the Federal tax law. *In re Estate of*

*Penney,* 504 F.2d 37, 42-43 (6th Cir. 1974) (Ohio law). *Estate of Bixby,* 140 Cal. App. 2d 326, 335-336 (1956). *In re Estate of Cooper,* 186 So. 2d 844, 846 (Fla. Dist. Ct. App. 1966). *French Estate,* 61 Pa. D. & C.2d 654, 658 (Orphans' Ct. 1963).

In the *Holcombe* case an annuity of a fixed amount was paid to a beneficiary out of income. Under the Federal tax law then in effect the trust paid an income tax with no deduction for the annuity payments. Nonetheless, the tax was charged against income, and the impact of the tax statute was altered to that extent.

If, therefore, the question now before us had arisen shortly after the enactment of the Internal Revenue Code of 1954, and the trustee had sought to make the equitable adjustments now in issue, we think the argument that he should have been permitted to make them would have been a powerful one. We turn to countervailing considerations.

3. *Practical considerations.* *Third Nat'l Bank & Trust Co.* v. *Campbell,* 336 Mass. 352, 356-357 (1957), was a case much like the present ones. The income beneficiary had received tax-free income, and the amount so received was in effect added to the amount of capital gain on which the principal of the trust paid a Federal tax. A guardian ad litem sought an equitable adjustment like that sought here, and this court denied the adjustment because of difficulties with its "practical operation." We therefore consider the practical operation of the equitable adjustment claimed here.

For a period of more than twenty years, the adjustment now sought has not been made by corporate fiduciaries in Massachusetts. There may be numerous trusts where the adjustment has not been made, and which have unallowed accounts stretching back a number of years. The present cases involve some capital gains taxes in unallowed accounts for years as far back as 1969. To make adjustments now for a period of several years might be to deprive the income beneficiary, often the testator's widow, of badly needed current income. In some cases the income benefi-

ciary at the time of the capital gains may have since died, and the adjustments might then require withholding of income from a successor income interest.

Accounts in large numbers must have been allowed in which the adjustment sought might have been but was not made. It is not suggested that such accounts could be reopened. But the rule advocated by the guardians ad litem would require the adjustment in accounts not yet allowed, covering some or all of the same periods as allowed accounts. Thus, accounts in trusts similarly situated might receive unequal treatment because of the fortuitous timing of their allowances.

There is some disagreement as to the amount of expense required to make the adjustments in question. But we think that the benefits in making the adjustments, at least in these cases, are not so compelling as to lead us to require the trustees to incur expenses they resist. This is not a situation in which a trustee has failed to make an adjustment, contrary to generally prevailing practice, or has made an adjustment in some years but not in others. We have instead a generally prevailing practice, not challenged before us for more than twenty years. In these circumstances, the trustees are not, as the guardians ad litem seem to assert, barred by their prior conduct from asserting the "inconvenience in making matters right."

There is no occasion here to lay down a rule for trusts hereafter created, as in *Loring* v. *Karri-Davies,* 371 Mass. 346, 354-355 (1976). The present cases arose under wills probated in 1916 and 1940, and the problem was created in 1954. Instruments governing large sums, if drawn after 1954, have no doubt commonly made provision for the problem here presented. If they have not, their legal effect is likely to arise in a different context from that of the present cases. As to small sums, the equity of the adjustment is in serious doubt; the Philadelphia experience suggests that below some level the game is not worth the candle. We are not given data needed to arrive even approximately at an appropriate "de minimis" level.

Nothing we say here is intended to question adjust-

ments made by a trustee who has been making such adjustments routinely over a period of years. Nor do we decide what is to be done where a trustee seeks to begin making such adjustments on some intelligent basis, or what is to be done if the inequity resulting from the Federal tax laws appears particularly dramatic and significant, as it apparently did in *Rice Estate, supra.* No such case is presented to us.

We therefore reject the contention of the guardians ad litem, and remand the cases to the Probate Court.

*So ordered.*