OPINION OF THE COURT
Renee R. Roth, S.
The trustee of this 1932 inter vivos trust seeks advice and direction on a novel question with respect to the allocation between principal and income of an extraordinary cash distribution about to be made to the trust from a subchapter S corporation.
The trust was created by an indenture dated May 21, 1932 for the income benefit of the grantor Valentine L. Davies. On *38 his death in 1961, the principal of the trust was divided into two equal shares, one each for the life income benefit of Mr. Davies’ children, John and Judith. Upon the death of each child, the principal is to be paid to his or her issue, or if none, to the grantor’s issue. Daughter Judith has three adult children and two infant grandchildren. John has no issue.
The major asset of the trust consists of 1,250 shares of stock in J. Clarence Davies, Inc. (the corporation). The trust is one of six stockholders in this closely held family corporation whose principal asset is rental real property in The Bronx. The combined shares of the trust constitute 23.75% of the shares of the corporation.
Until 1986, for purposes of Federal and State income tax, the corporation was a C corporation (see, Internal Revenue Code [26 USC] § 301 et seq.). In anticipation of the enactment of the 1986 Tax Reform Act, which increased the tax liabilities of such corporations and their shareholders on the sale of assets and distributions in kind, J. Clarence Davies, Inc., like so many other real estate corporations, elected subchapter S status (Internal Revenue Code [26 USC] § 1361 et seq.). It is noted that, unlike C corporations, subchapter S corporations (S corporation) are not subject to the so-called double tax on income. On the contrary, the shareholders of an S corporation are solely responsible for the tax on corporate income (even if that income is not distributed to them).
The code expressly defines the type of shareholders eligible for S corporation status. In order to qualify, the trust had to elect to become a "qualified subchapter S trust” (QSST). This simply required that Judith and John, the income beneficiaries of the trust, instead of the trust itself, became primarily and individually liable to pay income tax on income from the corporation (Internal Revenue Code [26 USC] § 1361 [d]; § 678).
The corporation is about to sell 9 of its 13 properties. There will be a substantial capital gain. As a result, it is estimated that John and Judith will become individually liable to pay income taxes of approximately $750,000.
The corporation proposes, following the sale of its properties, to declare an "extraordinary cash dividend” to all shareholders, including the trust, in an amount equal to the income tax the shareholders will be required to pay. Judith and John will not be able to use this extraordinary dividend unless it is allocated to income. Since neither has the financial capacity to pay the $750,000 tax, they would be compelled to seek to *39 revoke their QSST election (Internal Revenue Code [26 USC] § 1361 [d] [2] [D]). The tax consequences to trust principal would be substantial. For example, if the corporation is a C corporation the trust’s share of the tax would be $1,430,000 as opposed to a tax of $750,000 as an S corporation, a difference of $680,000.
The governing law, EPTL 11-2.1 (e) (9) (A), states that cash dividends are allocable to income. In addition, the terms of the trust specifically state that extraordinary cash dividends are also allocable to income (para third [8]). Subdivision (e), paragraph (10) of EPTL 11-2.1 states that a trustee "may rely upon any statement of the distributing corporation * * * concerning the source or chapter of distributions”. It therefore appears that upon the receipt of such a statement, the trustee would be authorized, without intervention of the court, to allocate the extraordinary cash distribution to income thus enabling John and Judith to meet their income tax obligations.
However, the trustee observes that since the dividend is generated as a result of the sale of substantial capital assets, and may occur at the same time as a liquidation distribution is made, such dividend, under the decisions, should ordinarily be allocated to principal. In other words, he suggests that a corporate characterization cannot be relied upon where the true source of the distribution is known (Matter of Hart, 32 AD2d 961, affd 27 NY2d 560; Matter of Cameron, 42 Misc 2d 33; Matter of Sears, 176 Misc 242; see also, 61 NY Jur, Trusts, § 449 et seq.). It is noted that these cases, however, deal with C corporations and do not consider a qualified subchapter S trust’s election when a trust is a stockholder in an S corporation.
The trustee therefore observes that although, as a matter of precedent, the extraordinary cash distribution should be allocable to principal, under the Internal Revenue Code, the entire tax attributable to the distribution must be paid by the income beneficiaries even though they will never receive any part of the principal of the trust since invasion is not permitted by the trust instrument.
All the income beneficiaries and all the presumptive remaindermen have consented to the allocation to income of the extraordinary cash distribution. Furthermore, in this proceeding the contingent remaindermen who are minors are virtually represented by their parents (SCPA 315).
*40 Although courts are generally reluctant to give advice and direction where not needed, this case warrants an exception to the rule. There is here a glaring injustice in burdening the income beneficiaries with a tax of $750,000 while principal will receive from the sale of the properties an ultimate distribution of roughly $1,745,000 free of any tax.
A similar situation arose when the 1954 Internal Revenue Code made certain grantors liable for a trust’s capital gains tax even though the gains were added to principal and could not be distributed to the grantor. Until EPTL 7-1.11 (a) was enacted (L 1969, ch 556), authorizing a trustee to “pay from principal to the creator of such trust an amount equal to any income taxes on any portion of the trust principal with which he is charged”, the courts permitted trustees to invade the trusts to reimburse the grantor for such taxes (see, Matter of Goldman, NYLJ, Apr. 7, 1964, at 13, col 4; Matter of Cowen, NYLJ, Feb. 13, 1964, at 16, col 2; 1969 NY Legis Ann, at 24; Bush, Hidden Grantor Trusts, 103 Trusts and Estates, at 269 [1964]).
Equitable adjustments have been required by the courts in other comparable situations where tax burdens are allocated unfairly. The leading case is Estate of Warms (140 NYS2d 169), later codified in EPTL 11-1.2, which holds that an executor’s election to treat administration expenses as an income tax deduction, rather than an estate tax deduction, requires an adjustment to principal for the increase in estate tax.
After Warms (supra), the courts limited such adjustments to inequities which resulted from an election by the fiduciary (see, Matter of Dick, 29 Misc 2d 648 [denying adjustment for capital expenses deducted from income where principal had capital gains]; Matter of Hewlett, NYLJ, Feb. 21, 1974, at 20, col 5 [capital gains tax paid off the top rather than allocated to the share which occasioned it]; see also, Newman and Halter, Principal-Income Adjustments, NYU, Dec. 18, 1978, at 1, col 1).
Some exceptions to this rule have developed (see, e.g., Matter of Pross, 90 Misc 2d 895; Matter of Holloway, 68 Misc 2d 361; Matter of Thomas, NYU, Aug. 12, 1988, at 22, col 4). In Holloway (supra), the court authorized the apportionment to income of taxes that would traditionally have been allocated to principal, observing that “the burden of income taxes should be charged to the account into which the taxed item goes” (68 Misc 2d, at 365).
*41 In the instant case, it is not the fiduciary who is required to make an election. Nonetheless, an election is necessary, namely, the income beneficiaries must decide whether to retain S corporation status or revert to a C corporation. If the trustee does not allocate the extraordinary cash distribution to income, the income beneficiaries will withdraw their election of subchapter S status, thereby causing an additional tax to the trust of $680,000. The trust’s share ($1,430,000) of the tax on the sale of the corporation’s assets will then be paid from principal. Obviously, such a result does a disservice to the remaindermen of the trust.
There is ample precedent to authorize the requested equitable adjustment (Matter of Warms, supra; Matter of Holloway, supra; see also, Matter of Rappoport, 121 Misc 2d 447; Matter of Backus, 106 Misc 2d 463; Matter of Fales, 106 Misc 2d 419; Matter of Simmons, 30 Misc 2d 1022). The court therefore advises and directs the trustee to allocate the extraordinary cash distribution to income.