Joseph A. Cox, S.
The testator’s will, probated in 1957, bequeathed M's residuary estate in equal shares to his widow and his daughter but imposed the estate taxes upon the share of tibe daughter. The executors are the two residuary legatees and Joseph Trachtman, the attorney who prepared the instrument. The principal assets of the residuary estate áre shares of stock in corporations wholly owned by the testator and which are engaged in music publishing.
In December, 1958 Trachtman petitioned this court for the judicial settlement of Ms intermediate account ás executor and for a determination that resolutions, adopted by majority vote of the directors of the corporations and providing for the dissolution of the corporations, were duly adopted and are binding upon the executors and that the executors take the action necessary to give effect to said resolutions. The petition of Trachtman stated that his application for a ruling as to the validity of the resolutions was made because of their adoption by Trachtman and the testator’s daughter, as only two of the stockholders, executors and directors, and contrary to the wishes of the widow, the third stockholder, executrix and director.
Following the institution of the accounting proceeding the widow filed a petition, verified December 33» 1958» in which she expressed her opposition to dissolution of the corporations and requested advice and directions as to the propriety, manner and time of sale of the assets of the corporations. The daughter answered this petition by an offer to purchase the widow’s interests in the corporations “ at a price equal to the fair value of such one-half interests.” The accounting proceeding and the proceeding instituted by the Widow Were consolidated and a conference was had with the Surrogate at which the three executors were represented by their respective attorneys. The result of the conference was an agreement that the corporate shares be sold at public auction and agreement also Was reached as to the method of fixing an upset price. This agreement was incorporated in an order Made by the Surrogate on March 3, 1959. Thereafter the dates for the acts, which the order provided to be done, were adjourned frOm time to time b.y stipulations of the parties, fin May, 1959 the widow petitioned for an order directing that a public sale of the corporate shares be held without further delay and the daughter countered With the assertion that her attorney’s prior consent to such a sale had *683 been unauthorized. In such answer the daughter suggested that a sale be accomplished by the submission of sealed bids and the two residuary legatees be given the opportunity to meet the highest bid so procured. A formal hearing then was had and the Surrogate also held a further conference with the parties at which rulings were made. Following this the Surrogate made a written decision directing a sale of the corporate shares at public auction and an order was made embodying the Surrogate’s rulings. At the time such order was made the widow was seeking the public sale which the order provided, , the executor had not retracted his prior consent to such a sale and the daughter was seeking the privilege of meeting the highest price received through sealed bids. None of the parties at that time was urging a dissolution of the corporations and, consequently, the Surrogate made no ruling in that regard. The fact that the parties in their heated controversies omitted any discussion of corporate dissolution was most convincing indication that the dissolution proposal had been abandoned by those who first advanced it.
Upon appeal from the order directing the sale the daughter exhumed the dissolution program and led the appellate court into the belief that the granting of the order for a sale of the stock was premised not only upon the Surrogate’s rejection of the corporate resolutions providing for dissolution but upon the assumption by the Surrogate of the prerogatives of both the corporate directors and the shareholders. Trachtman, upon the appeal, withdrew his consent to the public sale and apparently placed himself in the anomalous position of an executor, making no independent decision, but willing to vote with the widow and the daughter at such times as they should be in accord. The Appellate Division remanded the matter to this court for a full and complete hearing on questions of fact and issues of law posed in the applications of the interested parties (Matter of Bourne, 9 A D 2d 647). This now has been done, the greater part of 12 court days having been devoted thereto.
The present position of the daughter is that this court should direct that the purported resolutions calling for dissolution of the corporations be carried into effect and that a determination should be made that she is entitled to a distribution of copyrights in kind.
Trachtman, who stated, as a witness at the hearing, that at no time did he vote unequivocally for dissolution and that there is, in fact, not a resolution for dissolution of any corporation, now assumes a postion in his post trial memorandum that seems *684 to concur in the contentions of the daughter. If his present position is a concurrence with the daughter, it is apparent that, as a prerequisite to dissolution, appropriate corporate resolutions should he adopted.
The widow asks that a public auction of the corporate shares ■ be conducted and, in support of this position, she contends that such a sale will result in the maximum financial return to the estate and would obviate the difficulties of liquidation and division of assets. Upon all the evidence the court is convinced that a sale of the corporate shares at public auction not only would be to the financial advantage of the estate but would be the only practicable means of effecting a distribution under the will and the avoidance of both protracted litigation and continuing friction between the legatees. This conclusion is buttressed by testimony of business experts to the effect that it is essential for efficiency and economy of operation that the business organization be maintained as an entirety and that corporate disintegration would depreciate the value of the corporate assets and would result in a substantial loss of goodwill and prestige. Any attempted division of copyrights between the legatees would occasion financial sacrifice and unless accomplished by the drawing of lots, would add to the ill will that fuels the existing controversy.
The prior direction for a sale was made upon the basis that the court initially was acting upon the consents of all the executors and ultimately was acting upon the consents of the majority of them. Upon the appeal the daughter and Tracht-' man, a majority of the executors, insisted that there was before this court a primary and fundamental issue as to the dissolution of the corporations, but it no longer can be said that there is before the court any issue as to dissolution of the corporations for Traehtman now states that the necessary corporate resolutions do not exist.
This is a situation where the executrices are in complete disagreement, one advocating corporate dissolution and the other opposing dissolution and urging a sale of the corporate stock. The executor lends vocal support to one of these positions but declines to commit himself to definitive action. While section 48 of the Stock Corporation Law provides that corporate stock held by two or more fiduciaries may be voted by a majority of them and that, in the event of an equal division of opinion between an even number of fiduciaries, the court is required to intervene, such a stalemate does not here exist and the statute does not contemplate the avoidance of an impasse by a court’s *685 assumption of the duties of an executor who refuses to exercise his judgment and prerogatives.
The disposition to be made of the estate assets is wholly a matter of business judgment to be exercised by the fiduciaries to whom the testator entrusted the administration of his estate. The reports are replete -with judicial declarations that estate fiduciaries are not mere ministerial agents and the courts have neither the duty nor the authority to exercise the business judgment which is imposed upon fiduciaries. (City Bank Farmers Trust Co. v. Smith, 238 App. Div. 742, affd. 263 N. Y. 292; Arnstein v. Price, 285 App. Div. 557, affd. 309 N. Y. 694: Matter of Hotaling, 250 App. Div. 489; Matter of Tompkins, 264 App. Div. 612; Matter of Hanna, 119 Misc. 285; Matter of Pulitzer, 139 Misc. 575; Matter of Ebbets, 139 Misc. 250; Matter of Cooley, 4 Misc 2d 636; Matter of Lyman, 186 Misc. 153; Matter of Van Valkenburgh, 164 Misc. 295; Matter of Coleman, 150 Misc. 76; Matter of Purdy, 73 N. Y. S. 2d 38; Matter of Chapman, 32 N. Y. S. 2d 290; Matter of Collmar, 79 Misc. 592.) “ The administration of a decedent’s estate requires the exercise of judgment and discretion. The Surrogate has power to revieAV that discretion, but not to substitute his oavu discretion for the discretion of those upon whom the duty has been cast of settling the affairs of the estate ” (Matter of Leopold, 259 N. Y. 274, 277).
The court Avill neither vote the corporate stock held by the executors nor tell them how to vote and, consequently, Avill not direct a dissolution of the corporations at the instance of one of three executors. Neither Avill the court direct a public sale of the corporate stock when such action is opposed by a majority of the executors.
In Anew of the fact that this proceeding involves the settlement of an intermediate account by one executor and great uncertainty exists as to the nature of the assets which may come into the hands of the executors as a result of dissolution of the corporations or a sale of the corporate shares or other disposition of the estate assets, any question as to distribution of assets is prematurely raised. If, when the time arrives for distribution of estate assets, there is either a desire or a demand for distribution in kind pursuant to section 268 of the Surrogate’s Court Act, appropriate application to the court then may be made.
An intermediate decree may be submitted on notice denying the applications for directions,