In the Matter of the Intermediate Accounting of JOSEPH TRACHTMAN, as Executor of SAUL H. BOURNE, Deceased, Appellant-Respondent. MARY M. BOURNE, Also Known as BONNIE BOURNE, Appellant-Respondent; MARY E. KEEDICK, Also Known as BEEBE BOURNE, Respondent-Appellant.

First Department, June 28, 1960.

*Simon Rose* of counsel (*Louis Nizer, Walter S. Beck* and *Albert F. Smith* with him on the brief; *Phillips, Nizer, Benjamin, Krim & Ballon,* attorneys), for Mary M. Bourne, appellant.

*Samuel J. Silverman* of counsel (*Bernard Finkelstein* with him on the brief; *Paul, Weiss, Rifkind, Wharton & Garrison,* attorneys), for Joseph Trachtman, appellant-respondent.

*Arthur F. Driscoll* of counsel (*Milton M. Rosenbloom* and *Edmund C. Grainger, Jr.,* with him on the brief; *O'Brien, Driscoll & Raftery,* attorneys), for respondent-appellant.

*Lawlor & Rockwood* for Mary M. Bourne, respondent.

*Per Curiam.* Decedent's widow and daughter are the two residuary legatees under his will, sharing the estate equally, except that the estate taxes are imposed upon the share of the daughter. Mother, daughter and an attorney are the three executors under the will. Three music publishing corporations, which had been wholly owned by the decedent, constitute the principal assets of the estate. Although the will was probated more than two years ago, distribution of the estate's assets has been rendered impossible because of a stalemate resulting from a dispute among the executors as to the manner of disposing of the stock of the corporations.

In December, 1958 the attorney executor petitioned the Surrogate for a dissolution of the corporation, which dissolution was contemplated as a necessary preliminary to a distribution of the assets of the corporations in kind between the two legatees pursuant to section 268 of the Surrogate's Court Act. The two proceedings were consolidated.

At an earlier meeting of the three executors, who were also the sole stockholders and directors of the corporations, the

daughter had moved the adoption of a resolution for the dissolution of the corporations. The attorney executor had voted conditionally for the resolution, and the mother had opposed. Later, the attorney withdrew his consent to dissolution, when in his opinion the condition he had imposed did not eventuate.

When the consolidated proceeding came on to be heard by the Surrogate, however, the daughter and attorney withdrew their request for dissolution, and purportedly all three executors agreed that the stock of the corporations was to be sold at public auction at a price in excess of an agreed upset price. The Surrogate signed an order directing such a public auction of the stock.

Thereupon, the daughter asserted that her prior counsel's consent to the public auction was unauthorized; the Surrogate nevertheless adhering to his decision, she appealed to this court from his order of public sale.

Understandably enough, since all of the parties were mature, represented by competent counsel, and had consented to a public sale, the Surrogate had not undertaken as comprehensive and thoroughgoing a hearing and consideration of this application as he would have required had the proceeding been contested. In its posture when it reached this court on appeal, however, the litigation was bitterly contested; and we deemed it essential that the Surrogate give it the same exhaustive consideration he would have given it had the issues been contested. Accordingly, in remanding the proceedings to the Surrogate " for a full and complete hearing on the questions of fact and issues of law posed ", we stated the following: " In the light of these circumstances, the conferences and hearing before the Surrogate were insufficient to explore all the relevant facts and considerations necessary to arrive at a conclusion as to the most feasible manner to proceed." (9 A D 2d 647, 648.)

After protracted hearings the Surrogate made the following finding in the course of his opinion: " Upon all the evidence the court is convinced that a sale of the corporate shares at public auction not only would be to the financial advantage of the estate but would be the only practicable means of effecting a distribution under the will and the avoidance of both protracted litigation and continuing friction between the legatees. This conclusion is buttressed by testimony of business experts to the effect that it is essential for efficiency and economy of operation that the business organization be maintained as an entirety and that corporate disintegration would depreciate the value of the corporate assets and would result in a substantial loss of goodwill and prestige." (22 Misc 2d 681, 684.)

The Surrogate, however, denied the respective applications for directions, concluding that he would not order a dissolution of the corporations at the instance of one of three executors, since that would be tantamount to voting the stock they held or telling them how to vote. He also decided he would not direct a public sale of the corporate stock "when such action is opposed by a majority of the executors."

We are fully in accord with the well-considered conclusion of the Surrogate that a sale of the corporate shares at public auction offers the most practicable means of ending the existing stalemate. A continuance of the present conflict promises serious, perhaps irretrievable loss to the estate; and we are of the opinion that unless the parties can agree to a dissolution of the corporations and distribution in kind, a sale of the corporate assets should be held as quickly as is reasonably possible.

Sections 215 and 40 of the Surrogate's Court Act provide ample authority for the direction of a public sale of the stock of these corporations in the best interest of the estate (*Matter of Tarbell*, 285 App. Div. 985). Section 309 of the Surrogate's Court Act provides that this court "has the same power to decide the questions of fact, which the surrogate had"; and it "may reverse, affirm, or modify the decree or order appealed from, and each intermediate order, specified in the notice of appeal".

Accordingly, the order of the Surrogate dated May 3, 1960 should be modified, on the law and the facts, and in the exercise of discretion, to the extent of granting petitioner Bonnie Bourne's application for a public sale of the stock of the corporations owned by the estate, with costs to all parties filing briefs to be paid out of the estate, unless the legatees consent to a distribution in kind pursuant to section 268 of the Surrogate's Court Act. Settle order in which, among other things, suggestions will be received as to the upset price.

BOTEIN, P. J., VALENTE, STEVENS and BERGAN, JJ., concur.

Order of the Surrogate dated May 3, 1960 is modified, on the law and on the facts, and in the exercise of discretion, to the extent of granting petitioner Bonnie Bourne's application for a public sale of the stock of the corporations owned by the estate, with costs to all parties filing briefs to be paid out of the estate, unless the legatee's consent to a distribution in kind pursuant to section 268 of the Surrogate's Court Act. Settle order, in which, among other things, suggestions will be received as to the upset price.