OPINION OF THE COURT
C. Raymond Radigan, J.
The severe dislocations in shares that could be caused by an election to take administration expenses as estate income tax deductions as opposed to estate tax deductions together with executorial conflicts of interest has prompted this application for advice and direction.
The decedent’s death occurred on May 22,1976. His will provides in part one of the residuary for an outright fractional marital deduction formula bequest (stated in terms of one half the adjusted gross taxable estate) with the second part divided into three equal shares among his three children, Alfred, Gay and Charmi. The surviving spouse has reportedly assigned her entire interest to her son, Alfred, leaving only the son and two daughters as beneficiaries of this estate.
At the present time the three children are the successor executors with Bertram Harnett, an attorney in the firm *448 representing Alfred, as the fourth representative, all having succeeded Monroe Chapin, the original named executor who managed this estate through much of its stormy administration until his resignation as part of the stipulation of settlement of October 27, 1982.
Subdivision (g) of section 642 of the Internal Revenue Code (US Code, tit 26, § 642, subd [g]) permits an estate representative to elect to take the expenses of estate administration as either estate tax or fiduciary income tax deductions (or to divide them between the two types of taxes). Since deductions usually save more taxes on the fiduciary income tax return because income tax rates rise more rapidly than estate tax rates, an election to take such deductions on the fiduciary income tax return is quite common (Dobris, Limits on the Doctrine of Equitable Adjustment in Sophisticated Postmortem Tax Planning, 66 Iowa L Rev 273, 297-298). However, while the election may save over-all taxes, its incidental impact on the size of the marital deduction can have, as here, startling results. Since the marital deduction formula clause is geared to one half the “adjusted gross estate” which in turn is the gross estate less deductions for expenses, indebtedness, taxes and losses, it can be seen that if expenses are not claimed as estate tax deductions, the adjusted gross estate increases and the marital deduction grows by 50% of those expenses (Bush, Marital Deduction Pitfalls and their Legislative Cure, 33 Brooklyn L Rev 508, 519).
Using the terminology of some commentators, an amount equal to one half of the administrative expenses “swings” from the nonmarital share of the residuary to the marital share (Dobris, op. cit., 294, 295). In this estate, due in large measure to heavy litigation fees, that “swing” approaches the not inconsiderable sum of $500,000. More importantly, accountants retained by the four representatives to make various projections comparing the relative tax costs of alternate treatment of administration expenses as tax deductions have calculated that in the “best tax scenario” (taking expenses as fiduciary income tax deductions), the “swing” completely eliminates the nonmarital share, although approximately $300,000 has already been advanced to each of the two daughters. The “worst tax *449 scenario” (deducting the expenses on the estate tax return) results in the marital share being 48.066% with 51.934% being shared by the nonmarital beneficiaries. An intermediate position adopted by Bertram Harnett as a compromise posture would split the expenses equally between the two tax returns, resulting in a marital share of 91% and a nonmarital share of 9%. (The percentages stated in the last two positions are of the net balance on hand alleged to be approximately $3,000,000.)
The representatives being deadlocked on the election, the two daughters petitioned initially that the “best tax scenario” be opted for, but that an equitable adjustment or reallocation of assets from the marital to the nonmarital shares be directed by the court. Their realization that such a procedure would imperil the marital deduction prompted an amended petition in which, based upon their agreement to reimburse Alfred for any tax loss incurred, they request that the representatives be directed to deduct expenses on the estate tax return. While Mr. Harnett recommends the intermediate position, Alfred insists on the “best tax scenario” without any adjustment whatsoever.
Both case law and legislative enactments have addressed the question of whether an equitable adjustment is warranted by reason of the subdivision (g) of section 642 of the Internal Revenue Code (US Code, tit 26, § 642, subd [g]) “swing” from the nonmarital to the marital. With the exception of Matter of Levy (9 Misc 2d 561), the cases in New York have not required any adjustment (Matter of McTarnahan, 27 Misc 2d 13; Matter of Inman, 22 Misc 2d 573). The Temporary Commission on Estates, in recommending legislation (subsequently enacted as EPTL 11-1.2), rejected the Levy case and adopted the Inman rule of no adjustment, primarily because any forced contribution from the marital share would reduce the maximum marital deduction (Third Report of Temporary Comm on Estates, NY Legis Doc, 1964, No. 19, pp 331-332). An equitable adjustment between the marital and nonmarital shares is therefore statutorily foreclosed once an election has been made to use the expenses as income tax deductions. Query: What of judicial intervention and direction prior to exercise of the election? And, if judicial intervention is justified *450 what are the criteria that should govern the court’s discretion?
In the initial New York case that addressed judicial intervention in this context, the court was reluctant to interfere with the fiduciary’s exercise of discretion or impose its judgment (Matter of Colp, NYLJ, Jan. 20,1976, p 8, col 2 [Midonick, S.]). Later, however, the same Surrogate was of the revised opinion that the “court should provide guidance and direction to fiduciaries presented with Colptype tax election decisions and other determinations involving tax consequences” (Matter of Fales, 106 Misc 2d 419, 422). Well-settled authorities support this latter opinion particularly where conflicts of interest are present (Matter of Weinstein, 25 AD2d 776; Matter of Kramer, 101 Misc 2d 782) or irreconcilable differences result in a deadlock (Matter of Bourne, 11 AD2d 128, affd 8 NY2d 1041). Both of these factors are present and warrant the court’s intervention. Moreover, the court under its broad grant of jurisdictional powers has the authority to direct and control the conduct of an executor and make a full, equitable and complete disposition of the matter (McQuaide v Perot, 223 NY 75; see, also, Matter of Piccione, 57 NY2d 278).
The principles governing judicial intervention should trace the fiduciary’s own guidelines in exercising tax elections. These have been summarized as three aspects of fiduciary duty: (1) the duty to minimize the over-all tax burden on the estate and its beneficiaries; (2) the duty of impartiality; and (3) the duty to abstain from self-dealing. (Carrico & Bondurant, Equitable Adjustments: A Survey and Analysis of Precedents and Practice, 36 Tax Lawyer 545-546.) Since the petitioners have proposed to reimburse their brother for any tax loss, the first duty to minimize taxes should be considered obviated. In addition, article XII (X) provides that executors in exercising their powers (including tax elections) may “make such decisions as they deem advisable in all of the circumstances (regardless of whether the decision in a particular case may be the most advantageous one from the point of view of my estate as an entity).” There is here more than a suggestion that under the proper circumstances the executors could ignore the duty to minimize taxes.
*451 The second duty of impartiality which on occasion requires an equitable adjustment as the result of a tax election is, as observed above, foreclosed here by statute (EPTL 11-1.2, subd [B], par [1]). The third duty to refrain from self-dealing acts (Meinhard v Salmone, 249 NY 458, 464; Matter of Rothko, 84 Misc 2d 830, mod 56 AD2d 499, affd 43 NY2d 305; 2 Scott, Trusts [3d ed], § 170.25) should bar a fiduciary who is also a beneficiary from making a tax election unfairly favoring his beneficial interest over that of another beneficiary (Carrico & Bondurant, op. cit., p 546). Such a course would prohibit all three children from exercising any discretion on the election, leaving Mr. Harnett, who at least to some extent concedes the magnitude of a problem probably no one, much less the testator, could foresee.
The respondents would engraft upon the above fiduciary duties, one additional: The duty to make those choices as elections which produce the largest marital deduction bequest where the testator uses a marital deduction formula clause. The Commission on Estates considered the one case, Matter of Kennedy (39 Misc 2d 688), which by implication suggests such a duty and rejected it (Third Report of Temporary Comm on Estates, NY Legis Doc, 1964, No. 19, p 334). As observed by the Commission on Estates, the very selection of a marital deduction formula clause is keyed to minimizing over-all taxes which is the primary consideration, the size of the marital deduction bequest being merely tangential to this consideration.
Finally, the respondents’ reliance on Matter of Gilmour (18 AD2d 154) is misplaced. In Gilmour, as a result of the disallowance of some claimed debts and expenses, and the increase of the adjusted gross estate by gifts in contemplation of death, the marital deduction was substantially increased, leaving very little for the residuary beneficiaries (an excellent example of the dangers of formula clauses cited by Professor Trachtman in Leaping in the Dark, 93 Trusts and Estates 922). Citing well-settled principles, the court held it could not make a new will for the testator and thereby relieve the residuary beneficiaries from unforeseen circumstances. That case is far removed from the situation here where the parties still have it *452 within their power to prevent what is manifestly a grotesque perversion of the testator’s plan and would frustrate the obvious intent of the stipulation of settlement entered-into by the parties. A fair settlement of this estate is not arrived at if the nonmarital residuary is rendered asset-less. Considering all of the factors discussed, the fiduciaries are directed to deduct all administration expenses on the estate tax return provided the petitioners deposit with their attorneys in escrow the sum of $92,000 which the accountants submit approximates the total tax savings which could have been realized by deducting administration expenses on the fiduciary income tax return.