*309 OPINION OF THE COURT
Renee R. Roth, S.
This contested accounting raises novel issues, namely, whether testator’s adjusted taxable gifts to his sons made shortly before his death and used as income tax deductions should reduce the unified credit formula legacy.
The will of Sidney Ettinger, like many wills executed since the enactment of the Ecomonic Recovery Act of 1981 (ERTA), attempts to coordinate the use of the unified credit (Internal Revenue Code [26 USC] §§2010, 2505) with the unlimited estate and gift marital deduction (Internal Revenue Code §§ 2056, 2523) so as to achieve a zero Federal estate tax, while at the same time minimizing the tax to be paid upon the subsequent death of the surviving spouse.
Under sections 2010 and 2505 of the Internal Revenue Code (26 USC), testator’s estate received the benefit of the "unified credit” against the Federal estate and gift tax. Currently $192,800, the amount of the credit was $155,800 in 1986, the year of Mr. Ettinger’s death.
The credit is "unified” because it is an amount available to offset Federal gift taxes, if any, imposed on transfers made by an individual during life and, to the extent it is not consumed to offset such taxes, it is available to offset the Federal estate tax imposed upon the estate of the individual at death.
To value the unified credit in meaningful terms, the concept of the "exemption equivalent” has evolved — the amount of property which will generate an estate or gift tax equal to the unified credit and which will, therefore, as a practical matter, pass free of tax (Weinberger, The Marital Deduction, Advanced Will Drafting 1987, at 23). The exemption equivalent resulting from the current unified credit of $192,800 is $600,00. In 1986, the unified credit of $155,800 resulted in an exemption equivalent of $500,000. The exemption equivalent amount is often also referred to as the credit shelter amount.
If the first spouse to die disposes of the unused portion of his or her exemption equivalent in a manner that will not qualify for the marital deduction, that spouse will have a taxable estate that generates a tax equal in amount to the available unified credit. If the balance of the estate of the first spouse to die then qualifies for the marital deduction, the arrangement will eliminate the Federal estate tax payable upon the death of the first spouse to die and also keep to a minimum the property passing to or for the benefit of the *310 surviving spouse that qualifies for the marital deduction. If the property qualifying for the marital deduction is still on hand at the subsequent death of the surviving spouse, it will then be taxed as part of his or her estate. A formula clause seeking to minimize the property passing to the surviving spouse by causing an estate tax equal to (but not in excess of) the unused unified credit available to the estate of the first spouse to die is often referred to as a "zero tax” formula.
Testator, Sidney Ettinger, a domiciliary of Florida, died on May 30, 1986, survived by his second wife and two sons of his first marriage. His will was admitted to probate by this court.
After executing his will on October 24, 1985, Mr. Ettinger made a taxable gift of $221,350 to his two sons, Mark and Judd. It was not necessary to pay any Federal gift tax at the time of the gift because the gift tax generated by the transfer was completely offset by the application of a portion of the decedent’s unified credit. This gift was an adjusted taxable gift which, under section 2001 (b) (1) of the Internal Revenue Code, has to be added back to the testator’s taxable estate for the purpose of computing the tentative Federal estate tax imposed on his estate.
In article fourth of his will, Mr. Ettinger bequeathed his unified credit amount outright to his sons as follows: "a sum which shall be equal to the largest amount which would be entitled to pass free of Federal estate tax under this my will by reason of the unified credit * * * after taking into account * * * administration expenses which are charged against principal but not used as income tax deductions” (emphasis added).
In article fifth of his will, Mr. Ettinger disposed of his residuary estate in a qualified terminable interest property (QTIP) trust for the life income benefit of his wife Ann, remainder to sons Mark and Judd. In this article, testator expressed his intention to "zero out” the Federal estate tax by means of the available unlimited marital deduction as follows: "my said executor and/or Trustee is to elect that portion of this residuary trust, up to 100 percent, necessary to reduce the Federal estate tax to zero, after taking into account the available unified credit, final estate tax values and all liabilities paid out of and specific bequests funded out of the residuary trust. Said portion of this residuary trust shall be known as the 'Qualified Terminable Interest Property Trust’ ”.
Mr. Ettinger’s executor, his brother Joseph, has now accounted. In computing the amount of the credit shelter for *311 muía bequest to Mark and Judd, the executor has deducted from the $500,000 exemption equivalent preresiduary bequests of $4,000 (not disputed), administration expenses of $74,010 (paid out of the estate but not deducted for estate tax purposes) and adjusted taxable gifts of $221,350, thus reducing the credit shelter formula bequest from $500,000 to $200,640.
The decedent’s sons have filed objections to the account, contending that the credit shelter formula bequest to them should be $496,000 ($500,000 minus $4,000). They now move for summary judgment. This motion raises the issue of whether, given the language contained in Mr. Ettinger’s will, administration expenses and adjusted taxable gifts reduce the amount of the formula bequest in article fourth.
We turn first to the question of administration expenses. As noted, in article fourth of his will, Mr. Ettinger provided that the unified credit amount should be reduced by "administration expenses which are charged against principal but not used as income tax deductions”. Administration expenses are of course payable from principal in every estate. Nevertheless, for tax purposes, such expenses may be used as estate tax deductions (thereby reducing estate taxes) or as income tax deductions (thereby reducing income taxes). However, in an estate such as Mr. Ettinger’s, which is totally free of Federal estate taxes by virtue of the coordination of the unifed credit and the unlimited marital deduction, using administration expenses as estate tax deductions does not result in any present tax benefit. The executor therefore elected to use the $74,010 administration expenses as income tax deductions (see, Matter of Rappaport, 121 Misc 2d 447 [Sur Ct, Nassau County 1983]). To prevent the amount of such administration expenses (charged to principal but not claimed as estate tax deductions) from generating estate tax, they are generally used to reduce the amount of the credit shelter bequest (Covey, Marital Deduction and Credit Shelter Dispositions and the Use of the Formula Provision, at 23).
The sons contend that this case requires a different result because article fourth of Mr. Ettinger’s will directs that there be taken into account "administration expenses which are charged against principal but not used as income tax deductions” (emphasis supplied). However, there is no reason to reduce the credit shelter amount by the amount of administration expenses that are not used as income tax deductions. If such expenses are not used as income tax deductions, they are used as estate tax deductions and thus do not require *312 shelter from estate tax. Clearly, the above-mentioned direction in article fourth is either meaningless or results from the inadvertent substitution of the phrase "income tax deductions” for the phrase "estate tax deductions”. In either event, the result is the same.
Moreover, if these administration expenses are not sheltered by the unified credit, the tax they generate will reduce the marital deduction. Even worse, any tax paid from the residuary marital gift will create what is called a "tax on tax” problem, necessitating an interrelated computation of the tax and the marital deduction (Estate Planning & Tax Coordinator If 61, at 152 [Res Inst Am]).
A reading of Mr. Ettinger’s will establishes his intent to minimize taxes (Matter of Carmer, 71 NY2d 781; Matter of Walker, 64 NY2d 354; Matter of Fabbri, 2 NY2d 236; Matter of Martin, 146 Misc 2d 144, and cases cited therein). Accordingly, the court determines that the executor of Mr. Ettinger’s estate properly reduced the credit shelter formula bequest to the sons by the amount of administration expenses used as income tax deductions.
We now turn to the question of adjusted taxable gifts.
When structuring a credit shelter formula clause, such as the one used in Mr. Ettinger’s will, some commentators suggest a sort of "road map” for the operation of the formula by specifying that the credit shelter bequest should be reduced by all other property which reduces the availability of the unified credit, such as property passing to others under or outside the will or property interests for which no marital deduction is available. However, in the credit shelter bequest set forth in Mr. Ettinger’s will, there was no mention of predeath gifts.
A Tax Court case and two private letter rulings have considered the operation of a credit shelter bequest which did not specifically refer to adjusted taxable gifts. In Estate of Street (56 TCM [CCH] 774, 775 [1988]), testator’s will bequeathed "that amount of property in my estate which will not be subject to federal estate taxes under the Uniform [Unified] Estate and Gift Tax Credit as determined at the time of my death”; in Letter Ruling 8519001 the will contained the basic credit shelter formula ("the largest amount, if any, that can pass free of Federal estate tax under this will by reason of the unified credit”) but did not include adjusted taxable gifts in the three specific items to be taken into account (see also, Letter Ruling 8509001). With respect to all the above wills, it *313 was held that the gifts reduced the credit shelter bequest because such bequest was intended to be no greater than the amount which would be offset by the unified credit available to the estate.
In article fifth of his will, Mr. Ettinger directs his executor to reduce "the Federal estate tax to zero”. Such goal cannot be achieved without reducing the amount of the credit shelter formula bequest to his sons by the amount of the decedent’s adjusted taxable gifts. The mechanics of the zero estate tax computation illustrating this point are as follows:
Taxable estate (after funeral expenses, debts and the marital deduction)
Plus adjusted taxable gifts
$278,650.00
+ $221,350.00
$500,000.00
Tentative tax
$155,800.00
Less: gift tax payable with respect to gifts made by decedent
-0-
Unified credit
$155,800.00 $155,800.00
Estate tax payable
-0-
It is noted parenthetically that the above computation would have to be altered if the decedent’s estate was subject to a State death tax and the will contained a credit shelter bequest that took the Federal credit for such State tax into account.
Based upon the foregoing, the court concludes that when there is a disposition of the "largest amount” entitled to pass free of Federal estate tax (art fourth), and particularly when such a gift is coupled with a disposition of a marital share containing a direction to "reduce the Federal estate tax to zero” (art fifth), the executor, in computing the amount of such a disposition, must reduce the amount of the unified credit shelter by: (i) all adjusted taxable gifts, (ii) all estate taxes, (iii) all administration expenses which are not deducted for estate tax purposes and (iv) the amount of all testamentary and nontestamentary dispositions to recipients other than the surviving spouse and qualified charities. This is what the executor of Mr. Ettinger’s estate did when he computed the amount of the credit shelter formula bequest by subtract *314 ing the $4,000 disposition, administration expenses of $74,010 and adjusted taxable gifts of $221,350.
Accordingly, the motion of objectants Mark and Judd Ettinger for summary judgent is denied. Their objections to the account of the executor, insofar as the account fixes the amount of their unified credit shelter disposition at $200,640, are dismissed.