Joseph A. Cox, S.
Objections to the account of the surviving trustee have been filed by the representatives of a deceased income beneficiary. The objections pertain to a charge against income for the beneficiary’s purported share of income tax payable for the year 1957. It is the contention of the objectants *649 that the full amount of the income tax was chargeable against the principal of the trust.
Sales of trust securities in 1957 resulted in net capital gains of approximately $147,200 and an income tax, computed on such gains, was paid from the trust principal. The fact that the tax on a capital gain is chargeable against the principal account into which the gain is paid is a matter beyond dispute (Matter of Lissberger, 188 Misc. 811; Gilbert v. Wise, 192 Misc. 101; Matter of Hecht, 7 Misc 2d 326) and the question presented by the objections does not involve this fundamental rule of trust administration but arises solely by reason of the concept of “distributable net income ” which was introduced into the tax law by the 1954 Internal Revenue Code (§§ 643, 651, 652). Prior to that code the tax statute did not permit deductible items paid from a trust principal to be applied in reduction of the income currently taxable to the beneficiary and the result was that, in the absence of a tax liability payable from principal, such as a liability arising from a capital gain, principal deductions could not be utilized and were wasted. Under the 1954 code deductible items, such as attorneys’ fees and principal commissions, although charges against the trust principal, could be applied in reduction of the distributable net income. Unfortunately, the code permits such deductions to be applied against capital gains credited to principal only to such extent as the total of the available deductions exceeds the amount of the gross income required to be included in the distributable net income. The result is that deductible items paid from trust principal reduce the tax of the income beneficiary in the first instance and the result very well may be that trust principal will acquire no tax advantage from the charges which it has borne.
In his account the trustee charged the income beneficiary with the sum of $15,461.25 as her share of the income tax payment of $30,200, upon the basis that, had the Internal Revenue Code permitted the deduction of principal expenses from the capital gains, the tax payable by trust principal would have been but $6,500, rather than $30,200, and the tax on trust income would have been the amount charged the beneficiary in the account. The account states that ‘ ‘ The charge against income was limited to the lesser of (1) the saving which would have been incurred if the administration expenses payable from principal had been used as deductions from the capital gains taxable to principal and (2) the saving which was in fact incurred by reason of the use of such deductions in reducing distributable net income taxable to the income beneficiary.”
*650 The inequities created by the tax statute, as between income and principal interests in a trust, are apparent. The attempt of the statute to avoid the wasting of deductions in those instances where a trust has deductions in excess of gross income is commendable (see Senate Finance Committee Report, No. 1622 of the 53rd Congress, 2d Sess., p. 346), but, in establishing the mandatory priority of the 1954 code, it seems obvious that, under some circumstances, the statute gives an undue advantage to the trust beneficiary and denies the trust remainderman the privilege of deducting amounts which in fact were paid from the trust principal. The trustee has attempted to adjust this inequity in his account and he contends that it is within the equitable powers of this court to sanction his action. The Orphan’s Court of Montgomery County, Pennsylvania, has asserted jurisdiction to accomplish an adjustment of the account of the kind for which the trustee here contends (Matter of Rice, 1956) and in so doing the Pennsylvania court regarded Matter of Warms (140 N. Y. S. 2d 169) as closely analogous. However, the analogy does not seem to exist inasmuch as the Warms decision involved the exercise by an estate fiduciary of a statutory option which permitted the estate representative to apply administration expenses either as a deduction for income tax purposes or as a deduction in the estate tax return. The holding of the Warms case was that the fiduciary’s selection of one option could not constitute a determination as to whether the income beneficiary or the remainderman was entitled to the ultimate benefit of the deduction (see, also, Matter of Levy, 9 Misc 2d 561; Matter of McTarnahan, 27 Misc 2d 13). In the case at bar the trustee was not granted an option by the applicable tax statute. That statute permitted only one method of computing the tax and this court is not of the opinion that it has the authority to alter the impact of the tax statute.
A situation which is somewhat analogous is found in the history of estate tax apportionment in this State. When the transfer tax, which assessed a tax upon the transfer of particular property to a particular person, was replaced by the estate tax, which assessed a tax upon the entire estate without regard to the identity of the transferees (Knowlton v. Moore, 178 U. S. 41; Matter of Hamlin, 226 N. Y. 407), the burden of the estate tax was imposed upon the residuary estate of a testator not only as to the testamentary property but also as to nontestamentary property required to be included in the taxable estate. The operation of the Tax Law was inequitable to residuary legatees, who in most estates were the widow, *651 children or close relatives of the testator, but it was held that, despite such inequity, the tax was required to be paid out of the general estate without apportionment among all of the legatees or transferees (Farmers’ Loam & Trust Co. v. Winthrop, 238 N. Y. 488; Matter of Oakes, 248 N. Y. 280; Matter of Hamlin, supra). Because this unfair situation could not be corrected by judicial action it was necessary to enact section 124 of the Decedent Estate Law. It would seem that, if equitable powers were lacking to direct an apportionment of estate taxes and, in the absence of corrective legislation, the tax law would be controlling, no greater power now exists to deprive the income beneficiary of this trust of the windfall given to her by the tax law. The objections to the account are sustained.