(No. 45214.—

HELEN BRADSHAW *et al.*, Appellees, v. RALPH DAY-
TON LEWIS *et al.*, Appellants.

*Opinion filed May 21, 1973.*

RYAN, J., took no part.

KEEGAN & GOSDICK, of Rockford, and EDWARD
M. SULLIVAN, of Amboy (THOMAS A. KEEGAN, of
counsel), for appellants.

APLINGTON, KAUFMAN & BARRY, of La Salle,
and GUNNER AND KELLER, of Dixon (FREMONT M.
KAUFMAN, of counsel), for appellees.

MR. CHIEF JUSTICE UNDERWOOD delivered the
opinion of the court:

Ralph B. Lewis and his wife, Nellie R. Lewis, executed
a joint will in which they left everything to the survivor of

them, and, in the event of their simultaneous deaths, devised their farm real estate, livestock and machinery to their son, Dayton, and the residue to their five daughters. Nellie died in 1963, and upon her husband's death in 1968 the will was admitted to probate as his will. In a partition proceeding in which the decedent's son and five daughters as his sole heirs at law were parties either as plaintiffs or defendants, the circuit court of Lee County construed the joint will as making a gift by implication of the decedent's undivided one-half interest in a 440-acre farm to his son, Dayton. On appeal, the appellate court reversed and remanded for proceedings consistent with its holding that the will provided for a devise of the real estate to the son only in the event of the simultaneous death of Ralph B. Lewis and Nellie R. Lewis, and that since it was undisputed that their deaths were not simultaneous, the decedent's interest in the farm descended to his six children as intestate property. (*Bradshaw v. Lewis (1972), 5 Ill. App. 3d 261.*) We granted leave to appeal.

The 440-acre farm in question was acquired by Ralph B. Lewis and Nellie R. Lewis as joint tenants with right of survivorship in 1944. The joint will, which was drafted by their attorney, was executed by the Lewises on February 14, 1956. The will, after reciting that it was intended to be "each of our last will and testament" provided in the first paragraph that: "it is our will that our debts, joint and several, together with our funeral expenses be fully paid directly after our deaths, respectively, by our son, Dayton R. Lewis." In the second paragraph, each devised to the survivor of them all of the remainder of their estate "to have and to hold unto the survivor of us forever." The third paragraph provides as follows: "Should our deaths occur simultaneously so that neither survives the other, then we give, devise and bequeath all of our real estate, livestock and machinery to our son, Dayton R. Lewis; all of the rest, residue and remainder of our estate, in the event of our simultaneous deaths, we give, devise and

bequeath to our daughters, Ester, Helen, Marian, Pauline and Frances, share and share alike, provided they survive us; in the event any of our daughters do not survive us, their share shall be divided equally among the other daughters surviving." In the fourth and final paragraph, they nominated each other as executor and provided that "should our deaths occur simultaneously, so that neither survives the other, then we request that Dayton R. Lewis be appointed executor of this our Last Will and Testament ***."

The joint tenancy ownership of the farm by Mr. and Mrs. Lewis was severed when Nellie R. Lewis conveyed and warranted to her son Dayton an undivided one-half interest in the farm by deed dated December 18, 1962, and recorded February 26, 1963. After Mrs. Lewis died on November 4, 1963, her husband made no other will.

Upon the death of Ralph B. Lewis on July 5, 1968, the joint will was admitted to probate and his son Dayton and his daughter Helen Bradshaw were appointed administrators with the will annexed. The litigation now before us was instituted by the filing of a two-count complaint by Helen Bradshaw, Mary Frances Blythe and Marian Chaon as plaintiffs against their brother and sisters, Dayton R. Lewis (referred to in the pleadings as Ralph Dayton Lewis), Ester Foley and Pauline Lafferty. In Count I plaintiffs alleged that the joint will made no devise of any interest in the farm and that it descended as intestate property to his six children in equal shares. In Count II, plaintiffs sought to set aside the 1962 deed from their mother to Dayton for want of consideration and to impose a constructive trust on the farm for the benefit of all six children.

At the trial, there was testimony that Ralph B. Lewis and his wife had been tenants on the farm for a number of years, and that their son Dayton worked there prior to entering the service in 1941. The Lewises purchased the farm in 1944 from the estate of their deceased landlord

after ascertaining that Dayton intended to farm for a living after he left the armed services. When Dayton returned in December, 1945, he lived and worked on the farm, receiving spending money and a car as his only compensation until 1950 when he and his father became partners in the operation of the farm, sharing income and expenses on a 50-50 basis. Dayton married shortly thereafter and lived off the farm until 1959 when he returned to live on the farm after his parents moved into town. From 1959 to 1964 the farm was in the "soil bank" and no crops were grown. During this period Dayton worked on a construction job, but he and his father continued to share income and expenses of the farm. After 1964, active farming operations were resumed.

The deed conveying Mrs. Lewis' undivided half interest in the farm to Dayton was prepared by an attorney and signed by her on December 18, 1962, in the presence of Dayton, his father and the attorney. After Mrs. Lewis' death on November 4, 1963, Dayton personally paid his mother's funeral expenses and in 1967, when some of the buildings on the farm were destroyed, he paid for replacement of a barn from his own funds rather than out of the farm account. Dayton testified, however, that although he was aware that his parents had made a will, they never discussed the terms of the will with him, and he was unaware of the provisions thereof until after his father's death in 1968.

At the conclusion of the testimony, the trial court filed a memorandum of decision stating in part that "it appears that there is no doubt that it was the intention of the deceased husband and wife to give their son the farm, the livestock, and the machinery. The mother made certain by conveying her one-half interest to her son before her death. The father was aware of this and he did not make any other will, but retained his one-half interest until his death. Considering the will and all of the testimony, it is the judgment of this court that the will is construed as

making a gift by implication of the real estate to the son, Ralph Dayton Lewis." Thereafter, a decree was entered finding as to Count I that there was a gift by implication of the decedent's one-half interest in the farm to his son and as to Count II that there was no proof that the 1962 deed from Nellie R. Lewis to Dayton was other than a valid conveyance. Accordingly, both counts of the complaint were dismissed. Plaintiffs appealed only from that portion of the decree relating to Count I, and therefore the sole issue before the appellate court and this court is whether the trial court correctly construed the joint will as making a gift by implication of Ralph B. Lewis' undivided one-half interest in the farm to his son Dayton.

The fundamental rule of testamentary construction is to ascertain the testator's intention from the terms of the will itself. (*Feder v. Luster (1973), 54 Ill.2d 6; Hoge v. Hoge (1959), 17 Ill.2d 209.*) Devises by implication have been recognized in this and other jurisdictions only in very limited circumstances. (See 4 Page on Wills (Bowe-Parker rev. ed. 1961), sec. 30.18; 57 Am. Jur., Wills, sec. 1192.) As we stated in *Bond v. Moore (1908), 236 Ill. 576, 580,* such devises "can only be given effect in cases of such clear necessity that from the will itself no reasonable doubt of the intention can exist. Probabilities as to the testator's intention cannot be weighed, but the implication must be so strong that an intention contrary to that imputed to the testator cannot be supposed to have existed in his mind. (*Barlow v. Barnard, 51 N.J.Eq. 620; Brown v. Quintard, 177 N.Y. 75.*) It must be such as to leave no hesitation in the mind of the court and permit no other reasonable inference. (*Conner v. Gardner, 230 Ill. 258.*) Moreover, a gift by implication must be founded upon some expression in the will. It cannot be inferred from an absolute silence on the subject." These principles have been enunciated in a number of subsequent cases. *E.g., Erwin v. Kruse (1959), 17 Ill.2d 364; Peck v. Drennan (1951), 411 Ill. 31; Stern v. Stern (1951), 410 Ill. 377; First Trust and Savings Bank of*

*DeKalb v. Olson (1933), 353 Ill. 206; Pontius v. Conrad (1925), 317 Ill. 241; Martin v. Martin (1916), 273 Ill. 595.*

Too, it is apparent from a study of the cases finding gifts by implication that the facts in those cases more clearly demonstrated the testator's intent than do those in the case before us, or that, absent a gift by implication, the beneficiaries would be persons whom it was evident the testator had intended to exclude. See, *e.g., In re D'Alessandro's Will (Sur. Ct. 1968), 55 Misc. 2d 909, 286 N.Y.S. 2d 914; In re Hardie's Estate (Sur. Ct. 1941), 176 Misc. 21, 26 N.Y.S.2d 333, aff'd (1942), 263 App. Div. 927, 33 N.Y.S.2d 389; Erwin v. Kruse (1959), 17 Ill.2d 364; Stern v. Stern (1951), 410 Ill. 377.*

An additional factor which we find persuasive is that the theory of a devise by implication of the farm to the son would result in his receiving the entire farm, livestock and machinery plus a share in the residue of the estate equal to that of the daughters—a result clearly not intended by his mother or father as is manifest by the provision made for their simultaneous deaths: that the son receive the farm, livestock and machinery, and the residue be divided equally among the living daughters.

An examination of the relatively short and simple joint will of the Lewises reveals no ambiguities in its terms. Provision was made for disposition of their estates upon the happening of only two contingencies: (1) In the event one of them survived the other, they each bequeathed to the survivor their entire estates after payment of debts and funeral expenses; and (2) in the event they died simultaneously, then their real estate, livestock and machinery was to go to their son with the residue to their five daughters. Beyond that, the will went no further and was completely silent as to the disposition of their estates upon the death of the survivor of them. Their silence in this regard, when considered with the other provisions of the will, does not, in our opinion, give rise to an implication so strong as to leave no reasonable doubt that they intended

their son to have the farm under the contingency which occurred. To the contrary, the devise to their son was provided for only in the event of their simultaneous deaths, a happening which in the normal course of human events rarely occurs. Since that event did not in fact occur, the decedent's property descended to his heirs by intestacy.

While it can be argued that the provisions of the first paragraph "it is our will that our debts, joint and several, together with our funeral expenses be fully paid directly after our deaths, respectively, by our son, Dayton R. Lewis" create uncertainty and ambiguity, we believe a fair appraisal of the entire will indicates the obligation to pay debts was contingent upon the simultaneous deaths in which event the son received the entire farm and was named executor. The use of the term "respectively" was, of course, unnecessary, but its presence could well be the result of the inartful draftsmanship evident elsewhere in the will. In any event, its presence is, in our judgment, a much too uncertain premise upon which to base a gift by implication.

Accordingly, the judgment of the appellate court reversing that portion of the decree of the circuit court of Lee County relative to Count I of the complaint and remanding the cause to that court for further proceedings consistent with its opinion, is affirmed.

*Judgment affirmed.*

MR. JUSTICE RYAN took no part in the consideration or decision of this case.