(No. 63291.—

JOAN GRACE LARISON *et al.*, Appellees, v. DONNA KAY RECORD, Appellant.

*Opinion filed June 10, 1987.—Rehearing denied October 5, 1987.*

446

GOLDENHERSH, J., took no part.

Karl Bredberg, of Aledo, for appellant.

Dwight L. Shoemaker, of Aledo, for appellees.

JUSTICE MILLER delivered the opinion of the court:

Plaintiffs, Joan Grace Larison and Carol Jean Schaubroeck, filed in the circuit court of Mercer County a complaint for construction of the mutual will of their father and stepmother. Following the plaintiffs' amendment of their complaint, the trial judge granted the motion of defendant, Donna Kay Record, to dismiss the complaint. The trial judge denied plaintiffs' motion for reconsideration and request for leave to file a second amended complaint. The appellate court reversed the dismissal and remanded the case to the trial court, finding that the will granted plaintiffs a gift by implication. (141 Ill. App. 3d 477.) We allowed the defendant's petition for leave to appeal pursuant to Supreme Court Rule 315 (107 Ill. 2d R. 315(a)).

George C. Berge and his wife, Anna, executed a document entitled "Mutual Will of George C. Berge and Anna C. Berge," on January 21, 1961. George had two children, Joan Grace Larison and Carol Jean Schaubroeck, the plaintiffs in this action, by his previous marriage; Anna, in her previous marriage, had one child, defendant Donna Kay Record.

George Berge died July 19, 1977, leaving his two daughters and his wife, Anna, as his only heirs. The mutual will of George and Anna was filed with the circuit clerk of Mercer County on August 1, 1977, but was not probated. Subsequently, Anna died July 19, 1983, leaving her daughter as her only heir. On November 22, 1983, the mutual will of George and Anna was admitted to probate.

Following Anna's death, plaintiffs requested that the defendant account for all property owned by George and Anna. The defendant refused. The plaintiffs then filed the present lawsuit, requesting the court to determine their interests under the will.

The will stated that George and Anna, "desirous of disposing of our property, real and personal, joint and several, after our deaths, respectively, do hereby Make, Ordain, Publish and Declare this to be our, and each of our joint and reciprocal Last Will and Testament." The testators, George and Anna, then stated that their funeral expenses and all of their debts, both joint and several, were to be paid after their deaths, respectively.

The second provision of the will declared that the survivor between George and Anna was to take the real and personal property possessed by the other, "at the time of our deaths, respectively *** to be his or her sole and absolute property forever." The third paragraph provided that, "In the event that we meet our death in a common disaster and under such circumstances that there is no presumption, in law, of survivorship, then

and in that event, we hereby give, devise and bequeath all of our property of which we die seized or possessed to our beloved children, JOAN GRACE HEADLEY, CAROL JEAN SCHAUBROECK, and DONNA KAY RECORD, to share equally." (Joan Grace Headley is now known as Joan Grace Larison.) Finally, the fourth paragraph related that the survivor between George and Anna was to be the executor of the will. The will made no mention of who was to serve as executor if George and Anna died simultaneously.

Plaintiffs, the daughters of George, contend that the will created a gift by implication on their behalf. They argue that the will is ambiguous as written, and requires this court to apply rules of will construction and examine evidence showing that George would not have intended to disinherit his daughters.

Extrinsic evidence of a testator's intent is admissible only to resolve an ambiguity in a will. (See *Schuyler v. Zwiep* (1976), 42 Ill. App. 3d 91.) This will, however, is not ambiguous. It provides for dispositions of the testators' property under two circumstances. It does not provide for the disposition of property after the death of the surviving testator. The silence of the testators in the will as to the disposition of property after the death of the survivor of them does not make the will ambiguous. (*Bradshaw v. Lewis* (1973), 54 Ill. 2d 304; *Schuyler v. Zwiep* (1976), 42 Ill. App. 3d 91.) Extrinsic evidence of the testators' intent, therefore, is inadmissible.

The fundamental rule of testamentary construction is to ascertain the testator's intention from the terms of the will itself. (*Bradshaw v. Lewis* (1973), 54 Ill. 2d 304, 308.) It is an established rule, however, that when a testator fails to provide in the will for a contingency which the testator most likely would have provided for if he had considered it, the court cannot guess or speculate as to the disposition the testator likely would have made.

(*In re Estate of Cancik* (1985), 106 Ill. 2d 11; *Hampton v. Dill* (1933), 354 Ill. 415.) The court cannot create a wholly new gift under the guise of construing a will where the testator does not prescribe an inheritance under the circumstances which occur. *Weir v. Leafgreen* (1962), 26 Ill. 2d 406.

Gifts by implication, which must be based upon some express language in the will, exist only in limited instances. As this court stated in *Bradshaw v. Lewis* (1973), 54 Ill. 2d 304, 308:

"[S]uch devises 'can only be given effect in cases of such clear necessity that from the will itself no reasonable doubt of the intention can exist. *** [T]he implication must be so strong that an intention contrary to that imputed to the testator cannot be supposed to have existed in his mind. [Citations.] It must be such as to leave no hesitation in the mind of the court and permit no other reasonable inference.' "

The plaintiffs point to several expressions in the will which, they believe, when taken as a whole, are of sufficient weight to indicate a gift by implication: the testators described the document as their "joint and reciprocal" will; the testators provided for the disposition of their property "after our deaths, respectively"; and, the testators referred to all three daughters as "our beloved daughters." We will address individually each of these statements in the will.

First, plaintiffs contend that the testators intended to create a joint and mutual will, the will stating that it was the "joint and reciprocal Last Will and Testament" of the testators. If a joint and mutual will is executed pursuant to a contract or is itself a contract, the interests of beneficiaries named in the will vest upon the death of the first testator; use of a joint and mutual will can protect named beneficiaries from disinheritance by preventing the surviving testator from creating a valid

new will after the death of the first testator. (See *In re Estate of Schwebel* (1985), 133 Ill. App. 3d 777.) Plaintiffs suggest that the testators wished to create a joint and mutual will to insure that the survivor between them would not disinherit the child or children of the other; plaintiffs submit that the use of a joint and mutual will is evidence that the testators intended a gift to all three daughters after the death of both testators. Plaintiffs infer that a joint and mutual will would not have been used absent a gift which required protection after the death of the first testator.

Under the terms of the will, however, the testators provided for only two contingencies; the death of one with the other surviving, and their simultaneous deaths through a common cause or accident. It is not clear whether the testators intended a joint and mutual will as to the two contingencies provided for. Even if the testators intended to be bound to the dispositive scheme of the will until the happening of one of those two contingencies, nothing in the will suggests that the surviving testator was not free to make a new will if one survived the other.

The plaintiffs next observe that the testators recited in their will that they wished to dispose of their property "after our deaths, respectively." The will also stated that the testators wanted all their debts and funeral expenses paid "after our deaths, respectively." The plaintiffs submit that the word "respectively" demonstrates that the testators intended the will to operate after the deaths of each testator, whether the deaths occurred simultaneously or at different times. The testators' use of "respectively" in the will cannot be given the meaning which plaintiffs attribute to it. The testators stated in the second clause of the will that they "give, devise, and bequeath, each to the other, respectively," all the property which they possessed "at the time of our deaths, respec-

tively." If, as plaintiffs claim, "respectively" indicates that the will was to operate after the deaths of both testators, an anomalous situation is presented: at the first testator's death, his or her property would pass to the surviving spouse under the second clause; at the death of the second testator, plaintiff's reading of "respectively" would require the property to pass back to the deceased spouse, a result clearly not intended. Because "respectively" in the second clause obviously does not bear the meaning plaintiffs suggest, plaintiffs' contention concerning the use of "respectively" in the precatory language of the will lends little weight to the claim of a gift by implication.

The plaintiffs next submit that the testators referred to their daughters as "our beloved children" in the will because the testators cared for their daughters and wanted them to share the testators' estates. The plaintiffs note that the reference to "our beloved children" is in accord with the presumption against construing a will to disinherit an heir. (See *Pontius v. Conrad* (1925), 317 Ill. 241.) The plaintiffs maintain that this reference demonstrates that the testators wished to leave their estates to their daughters equally, not only in the event that the testators died simultaneously, but also if their deaths occurred at different times.

The testators referred to their daughters only once in the will, in the context of the "death by common disaster" clause. The instructions in this clause are clear: "In the event that we meet our death in a common disaster *** then and in that event, we hereby give, devise, and bequeath all of our property *** to our beloved children *** to share equally." Although the provision does refer to all three daughters as "our beloved children," by its terms the provision was to operate only after an event which did not occur. We cannot construe this provision as evidencing an unmistakable intent by the testators to

make equal devises to the plaintiffs and defendants in the event that one testator survived the other and then died.

We are not persuaded by plaintiffs' contentions that the testators clearly intended a gift to them under the circumstances which occurred. We find statements in the will which suggest that, contrary to the plaintiffs' assertions, no gift by implication was intended.

First, the will states in its second clause that the estate of the testator who died first was to pass to the survivor, "to be his or her sole and absolute property forever." Plaintiffs suggest that the will made a gift to them by implication, vesting upon their father's death, and that Anna held only a life estate after George's death. The language quoted, however, indicates that a fee simple interest in George's estate passed to Anna upon George's death. Such a disposition in fee tends to negate the plaintiff's contention that the testators intended that the survivor between them would take only a life estate in the property which passed by the will with a remainder over in equal shares to the plaintiffs and the defendant. The language also suggests that the testators intended the survivor between them to have the unfettered right to decide the disposition of the estate after the survivor's death.

Second, we note that the testators did not name any of their daughters as executrix or co-executrices under the will, which they might have done had they intended the daughters to share the estate after their survivor's death. (See *In re D'Allesandro's Will* (1968), 55 Misc. 2d 909, 286 N.Y.S.2d 914; *cf. Bradshaw v. Lewis* (1973), 54 Ill. 2d 304.) The testators did not, in fact, name any executor or executrix to serve in the event they died in a common cause or accident, or after the survivor of them dies. The failure to name an executor suggests that, in making the will, the testators did not in either of those

two events contemplate the disposition of their estates beyond their gifts to the survivor between them, other than to provide that the plaintiffs and the defendant should share the property equally in the event of the testators' simultaneous deaths.

The plaintiffs claim that the will reveals the testators' intention not to die intestate; failing to find a gift by implication, plaintiffs suggest, would contradict the testators' intentions. Plaintiffs are correct in claiming the testators intended to dispose of their property by will, rather than through the intestacy laws. The first sentence of the will states that the testators, "desirous of disposing of our property, *** do hereby Make *** our joint and reciprocal Last Will and Testament." The will did, in fact, dispose of their estates under the contingencies for which the testators provided. If the testators meant for their will to dispose of their possessions after both of their deaths separately, they did not properly execute this intention by providing for the complete disposition of their estate in all contingencies. It is conceivable that the testators agreed to allow the survivor between them to dispose of the estate, through testamentary disposition or otherwise, in consideration of the treatment the survivor would receive in his or her later years. See *In re Estate of Blansett* (1975), 28 Ill. App. 3d 552.

It would not be unreasonable for the testators to have intended to divide their estate equally among their daughters after both of the testators died other than in a common disaster. If this was their intention, however, the testators failed, through attorney neglect or otherwise, to specify this intention in the will. As we have noted, the testators may have failed to consider the disposition of their property after the survivor's death. This court cannot guess at the disposition the testators probably would have made by weighing the various possibili-

ties of the testators' intentions. (*Pontius v. Conrad* (1925), 317 Ill. 241.) We are unable to determine from the will itself that no reasonable doubt exists of an intention on the part of the testators to provide for a gift of equal shares of the testator's property to the plaintiffs and the defendant upon the death of the survivor of the testators; we cannot find, therefore, that a gift to the plaintiffs exists by implication under the will.

We hold that no gift to the plaintiffs was created either under the express terms of the testators' mutual will, or by implication. Accordingly, the judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE GOLDENHERSH took no part in the consideration or decision of this case.