*In re* ESTATE OF LOUIS M. MILLER, Deceased (Bank of Alton, Petitioner-Appellee and Cross-Appellant, v. Mary Louise Miller Maley *et al.*, Trustees of the Louis M. Miller Marital Trust, Respondents-Appellants and Cross-Appellees).

Fifth District   No. 5—91—0163

Opinion filed June 22, 1992.

Gerald J. McGivern, of Wiseman, Shaikewitz, McGivern, Wahl, Flavin & Hesi, P.C., of Alton, for appellants.

John Dale Stobbs, James S. Sinclair, and John D. Stobbs II, all of Stobbs & Sinclair, of Alton, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Respondents, Mary Louise Miller Maley and Paul Maley, as testamentary trustees of the Louis M. Miller Marital Trust, appeal from a judgment of the circuit court of Madison County construing the will of Adele M. Miller, deceased. The central issue before the circuit court was whether a tax-exoneration clause in Adele's will should be interpreted as directing her executor to pay from her estate excess estate taxes due at her death because of a qualified terminable interest property (Q/TIP) trust created under the will of her deceased husband. Based on extrinsic evidence admitted over respondents' objection, the circuit court concluded that Adele had not intended to direct such payment. Respondents now appeal, contending that the circuit court erred in admitting extrinsic evidence because Adele's will was unambiguous. We reverse and remand with directions that the petition to construe be dismissed.

The record in this case is voluminous, but the facts necessary to our disposition are straightforward. Louis and Adele Miller were husband and wife. In his will, Louis created a residuary trust known as the Louis M. Miller Marital Trust, the net income of which was to be paid to Adele during her life. Upon Adele's death, the principal from this marital trust was to be paid into a separate family trust. Designated as trustees of these trusts were Mary Louise Miller Maley, Louis' daughter, and Mary's husband, Paul A. Maley.

■■ The terms of the marital trust were subsequently refined by a codicil to the will to ensure that the trust assets could qualify as "qualified terminable interest property" (Q/TIP property) and be eligible for the marital deduction in Louis' estate under section 2056 of the Internal Revenue Code (26 U.S.C.A. §2056 (West 1989)). For Q/TIP property to qualify for the estate tax marital deduction under that provision, an election must be made by the executor of the estate of the spouse who created the trust. Where such an election is made, the value of the property qualifying for the marital deduction in that spouse's estate is includable in the surviving spouse's estate at his or her death. 26 U.S.C.A. §2044 (West 1989).

■■ The inclusion of the value of this property in the surviving spouse's estate will increase that spouse's estate tax liability. The tax code provides that the surviving spouse's estate is entitled to recover this additional tax from the persons who receive the Q/TIP property on the spouse's death. The recoverable amount is defined as the excess of the estate tax paid over the estate tax which would have been payable if the value of the qualified terminable interest property had not been included in the surviving spouse's gross estate. (26 U.S.C.A. §2207A(a) (West 1989).) This provision for recovering the estate tax does not apply, however, if the surviving spouse "otherwise directs by will." 26 U.S.C.A. §2207A(a)(2) (West 1989).

Upon Louis Miller's death, his estate made the necessary election to qualify the value of the assets of the marital trust as Q/TIP property so that the marital deduction could be taken, and Adele, his surviving spouse, began receiving income from the trust. Adele subsequently executed a will which revoked a prior will she had made during the marriage. A tax-exoneration clause was included in the first paragraph of the new will which stated:

"Unless my Trustee of my Living Trust dated June 11, 1985 should elect to do so, I direct my Personal Representative hereinafter named to pay all of my legal debts, including the expenses of my last illness and funeral, and without reim-

bursement or contribution, all estate taxes, inheritance taxes, death taxes and succession duties assessed by reason of my death by the United States of America, any state thereof, or any foreign government."

Two separate codicils were subsequently executed by Adele, but neither of them altered this provision.

Upon Adele's death, the value of the assets of the Louis M. Miller Marital Trust were includable in her gross estate for estate tax purposes under the Internal Revenue Code provisions discussed above. Petitioner, the Bank of Alton, as personal representative of Adele's estate, determined that the excess Federal estate tax due as a result of this inclusion amounted to more than $400,000. Petitioner demanded that this additional tax liability be paid by respondents, the testamentary trustees of the Louis Miller Marital Trust.

When the trustees refused to make such a payment, petitioner initiated these proceedings to construe the tax-exoneration provision of Adele's will quoted above. In its petition, as amended, petitioner contended that the tax-exoneration provision did not constitute an "otherwise" direction within the meaning of section 2207A(a)(2) of the Internal Revenue Code (26 U.S.C.A. §2207A(a)(2) (West 1989)), that Adele did not, in fact, intend "to pay the federal estate tax or Illinois inheritance tax attributable to the inclusion of the marital portion in her estate for such tax purposes," and that such taxes should, instead, be paid by the trustees of the Louis M. Miller Marital Trust.

After hearing extensive extrinsic evidence, which was adduced over respondents' repeated objections, the circuit court concluded that under Adele's will, her estate was required to "suffer the duty of paying all necessary Federal Estate Tax, or any other taxes that may be incurred at the time of her death" and that "it is clear that her Personal Representative will have the responsibility to pay any and all Federal estate Taxes that may have arisen from her interest in the Q-tip [sic] Trust of Louis M. Miller." The court further found, however, that it was not Adele's intent that her full estate be available to pay the Federal estate tax and other taxes attributable to inclusion of the value of the Q/TIP property. In the court's view, Adele had intended to "preserve her original estate plus any accumulations or increase in value," and that the taxes attributable to inclusion of the Q/TIP property could only be paid from the balance of the assets in her estate after the value of her original estate, with accumulations or increases in value, was set aside. According

to the court, the value of this excludable portion of the estate was $218,482.78. In the court's words, this was "the specific value of the sole property of the Estate of Adele M. Miller and is free of any requirement of contribution for payment of Federal Estate Tax or other tax that may have arisen from the Testamentary Trust of Louis M. Miller, deceased."

From this language, one would conclude that after the $218,482.78 is set aside, all of the remaining assets in Adele's estate would be available to pay the Federal estate tax or other tax attributable to inclusion of the Q/TIP property from the Louis M. Miller Marital Trust. The court went on to suggest, however, that not even that portion of Adele's estate had to bear the ultimate burden of the additional tax. In an order dated September 5, 1990, which was incorporated into the court's final judgment, the court stated that upon payment from the balance of the assets in Adele's estate of "any and all Federal estate taxes that may have arisen from her interest in the Q-tip [sic] Trust of Louis M. Miller ***, the Executor may then seek appropriate reimbursement from the Trustees of the Louis M. Miller Trust pursuant to law." Thus, despite all of its previous analysis, the court's ultimate conclusion appears to have been that Adele's estate did not have to pay any of the taxes attributable to inclusion in her estate of the Q/TIP property.

On this appeal, the parties themselves do not interpret the circuit court's judgment as intending to reach this result. They construe it as holding simply that Adele's separate estate has no liability for the taxes in question. Even if we were to accept the parties' less expansive view of the court's judgment, however, that judgment could not stand.

■ In this case the circuit court based its judgment on its understanding of what Adele's intent must have been. It is true that in construing a will, a court's primary objective is to give effect to the testator's intent, provided the intent is not against public policy. (*Harris Trust & Savings Bank v. MacLean* (1989), 186 Ill. App. 3d 882, 885, 542 N.E.2d 943, 945.) It is also true, however, that the court must ascertain this intention from the terms of the will itself. (*Larison v. Record* (1987), 117 Ill. 2d 444, 448, 512 N.E.2d 1251, 1253.) In this case the circuit court plainly did not limit itself to the terms of Adele's will. Instead, it relied extensively on documents, testimony and other extrinsic evidence accumulated in multiple hearings over the course of more than a year. This it should not have done. A court may allow extrinsic evidence only to resolve am-

biguity in the will. (*Harris Trust & Savings Bank*, 186 Ill. App. 3d at 886, 542 N.E.2d at 945.) Adele's will contains no ambiguity.

●4 The tax-exoneration clause in that will plainly states that Adele's "Personal Representative" is to pay from her estate "and without reimbursement or contribution, all estate taxes, inheritance taxes, death taxes and succession duties assessed by reason of [her] death by the United States of America, any state thereof, or any foreign government." The estate and inheritance taxes attributable to the inclusion in her estate of the value of the Q/TIP property came due when she died. Because her death was the triggering event, the taxes were unquestionably "assessed by reason of [Adele's] death" within the meaning of the will. No other construction is possible without ignoring the plain and ordinary meaning of the will's language.

The circuit court attempted to avoid this conclusion and to justify the use of extrinsic evidence on the grounds that Adele's will was latently ambiguous. Where a latent ambiguity exists, evidence extrinsic to the will is admissible to determine the intent of the testator. (*In re Estate of Smith* (1990), 198 Ill. App. 3d 400, 402, 555 N.E.2d 1111, 1113.) This rule has been applied where legacies are in clear and unambiguous terms but the testator did not own the property described in the bequest, or where there is an incorrect description of a bequest or of a legatee or the description fits more than one object or person. (*In re Estate of Laas* (1985), 134 Ill. App. 3d 504, 510, 480 N.E.2d 1183, 1187-88.) None of these circumstances was alleged or established here.

■ The record did show that if the tax-exoneration clause in Adele's will were given its plain and ordinary meaning and the disputed taxes had to be paid out of her estate, the estate would be exhausted. Nothing would be left with which to fulfill various specific bequests which the will sets out. The circuit court may have believed that this was an unfair result, but it should not have allowed that belief to alter its conclusion. A court may not distribute a testator's estate according to its own sense of equity and justice. (*In re Estate of Kirchwehm* (1991), 211 Ill. App. 3d 1015, 1020, 570 N.E.2d 851, 855.) What matters is the testator's intent as expressed in the will (211 Ill. App. 3d at 1018, 570 N.E.2d at 854), and what Adele's will says here is that her estate is to pay the tax.

Adele executed her last will after Louis Miller's death. She knew of the marital trust created by his will and the tax provisions related to it, yet she still included this tax-exoneration provision in her own will. At the time, she may well have believed that her es-

tate would end up being large enough that she would be able to satisfy both the additional tax obligations and the specific bequests she made. This turned out not to be the case. Just because a testator's testamentary plan does not work out how she may have envisioned, however, does not mean that the plan itself was not intended. To hold otherwise would mean that every will would be subject to judicial redrafting whenever a change in circumstances made compliance with the terms of the will impossible.

As an alternative basis for supporting the circuit court's judgment, petitioner argues that the tax-exoneration provision in Adele's will is insufficient as a matter of law to constitute a valid "otherwise" direction to her personal representative to pay from her estate the additional taxes attributable to the Q/TIP property. It is insufficient, according to petitioner, because it did not specifically mention section 2207A(a)(2) of the Internal Revenue Code (26 U.S.C.A. §2207A(a)(2) (West 1989)). The only support petitioner can advance for this position is an example given by the Internal Revenue Service to illustrate application of a proposed amendment to IRS regulations relating to the estate tax marital deduction. That amendment was designated as Proposed Regulation §20.2207A—1, 49 Federal Register 21350—03 (May 21, 1984). Although the amendment was first published for notice and comment in 1984, we have not found and petitioner has not cited any authority which indicates that it was ever actually enacted. We therefore fail to see how it can be given any kind of authoritative effect now.

Even if this amended regulation had been adopted by the IRS, it would be of no aid to petitioner. The example given in the regulation to illustrate the application of section 2207A of the Internal Revenue Code (26 U.S.C.A. §2207A (West 1989)) indicates that where a deceased husband's will created a Q/TIP trust with the income payable to the wife for life and the wife's will contains "no provision regarding section 2207A(a)," a wife's estate can recover the estate tax attributable to inclusion of the trust assets in her estate from the trust itself or, if the trust assets have been distributed, from the persons to whom the distribution was made. We see nothing in this illustration, however, which purports to require direct reference to section 2207A of the Internal Revenue Code (26 U.S.C.A. §2207A (West 1989)) before an "otherwise" direction clause in a tax-exoneration provision will be effective.

Even if the regulation could be construed to include such a requirement, it would not be binding. An agency's interpretation of a statute cannot supersede the language of the statute itself. (*Bukala*

*v. United States* (7th Cir. 1988), 854 F.2d 201, 203.) Section 2207A of the Internal Revenue Code (26 U.S.C.A. §2207A (West 1989)) nowhere requires a specific reference to that statute before an "otherwise" direction clause will be given effect. By contrast, section 2207B of the Internal Revenue Code (26 U.S.C.A. §2207B (West 1989)), a parallel provision relating to the right to recover taxes where a decedent has retained a life estate, does expressly require an "otherwise" direction to specifically refer to the statute. (See 26 U.S.C.A. §2207B(a)(2) (West 1989).) Had Congress intended to impose the same requirement under §2207A (26 U.S.C.A. §2207A (West 1989)), it could easily have so provided. We must presume that its failure to do so was deliberate. Accordingly, we cannot accept petitioner's argument without rewriting an act of Congress. This we have no power to do.

In sum, the "otherwise" direction clause of the tax-exoneration clause in Adele's will was valid. Its terms were clear and unambiguous. Adele's estate is required to pay the taxes attributable to inclusion in her estate of the value of the Q/TIP property. No part of Adele's estate is free from this tax burden, and the estate has no right to obtain reimbursement for the taxes from the marital trust or the parties to whom the assets of the trust may pass. Because the will is unambiguous, the circuit court erred in admitting the extrinsic evidence (*Larison v. Record* (1987), 117 Ill. 2d 444, 448, 512 N.E.2d 1251, 1253). Moreover, because a court has no authority to construe a will which is neither ambiguous nor uncertain (*Jusko v. Grigas* (1962), 26 Ill. 2d 92, 96, 186 N.E.2d 34, 37), petitioner's action for construction of Adele's will should have been dismissed. (*In re Estate of Smith* (1990), 198 Ill. App. 3d 400, 402, 555 N.E.2d 1111, 1113; *In re Estate of Laas* (1985), 134 Ill. App. 3d 504, 509, 480 N.E.2d 1183, 1187.) Accordingly, the judgment of the circuit court of Madison County is reversed, and this cause is remanded with directions to dismiss petitioner's petition to construe.

Reversed and remanded with directions.

RARICK and H. LEWIS, JJ., concur.